**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Noel Cesar CAMPOS–ASENCIO, Defendant-Appellant.**

**No. 86–2910
Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

July 9, 1987.

---

Roland E. Dahlin, II, Federal Public Defender, Marjorie A. Meyers, Karin I. Converse, Asst. Federal Public Defenders, Houston, Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Susan L. Yarbrough, Frances H. Stacy, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before REAVLEY, JOHNSON, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

Noel Cesar Campos-Asencio (Campos) appeals his conviction for illegal reentry into the United States after deportation. 8 U.S.C. § 1326. At trial, the district court denied Campos' motion to dismiss the indictment on the ground that he lacked counsel at his prior deportation hearing. Because a recent Supreme Court case has changed this Circuit's law on the viability of such challenges, we reverse and remand so that the district court may reconsider Campos' deportation proceedings.

## I. BACKGROUND

Campos, a citizen of El Salvador, was deported from the United States to his homeland on October 6, 1985. As discussed below, no other facts surrounding this 1985 deportation were established at trial. A deported alien may apply for the Attorney General's consent to reenter, but INS records show no such application by Campos, and Campos does not claim that he did apply for reentry. Instead, on July 19, 1986, he crossed the border on foot and was apprehended the same night. Campos was convicted of illegal reentry following deportation and sentenced to time served and four years' probation. Soon after Campos was deported to El Salvador.

## II. DISCUSSION

### A. *The Indictment*

The statute under which Campos was convicted reads:

Any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, *unless* (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, *the Attorney General has expressly consented* to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

8 U.S.C. § 1326 (emphasis added). The indictment makes no explicit reference to a lack of Attorney General consent for reentry; it recites:

That on or about July 19, 1986, NOEL CESAR CAMPOS–ASENCIO, an alien who had theretofore been arrested and deported from the United States on or about October 6, 1985, was found in the United States in the Southern District of Texas, being wilfully in the United States unlawfully, in violation of Section 1326, Title 8, United States Code.

Record Vol. 1 at 1.

The Government presented records, at trial, to show that Campos in fact lacked the Attorney General's consent to reenter the country. Campos did not dispute this evidence. For the first time on appeal, Campos argues that this failure to explicitly allege lack of consent renders the indictment insufficient.

■■■ While normally objections to an indictment are waived if not made before trial, a defendant may at any time claim that an indictment fails to "charge an offense." Fed.R.Crim.P. 12(b)(2); *United States v. Oberski*, 734 F.2d 1034, 1035 (5th Cir.1984), *cert. denied*, 469 U.S. 1113, 105 S.Ct. 797, 83 L.Ed.2d 790 (1985). However, when, as here, the defendant had notice of the issue, demonstrates no prejudice, and waits for appeal to assert his challenge, an appellate court will read the indictment liberally. *Oberski*, 734 F.2d at 1035; 2 W. LaFave & J. Israel, *Criminal Procedure* 445–51. A statutory citation cannot, by itself, substitute for setting forth the elements of the crime, but a citation may reinforce other references within the indictment. *United States v. McLennan*, 672 F.2d 239, 244 (1st Cir.1982). The indictment in the instant case both alleges that Campos was in the United States "unlawfully" and points to the specific statute containing the lack of consent requirement. Hence the indictment sufficiently alleges lack of consent.[1]

### B. *Attack on Prior Deportation*

Campos attacks the use of his 1985 deportation on the grounds that he was not represented by counsel at the deportation hearing, was not informed of his right to counsel and of the availability of free legal help, and did not waive counsel. At the time the district court heard Campos' case, this Court prohibited such "collateral" attacks on deportation orders. *United States v. De La Cruz Sepulveda*, 656 F.2d

---

**1.** Having held that the indictment did adequately refer to lack of consent, we need not decide whether lack of consent is so essential an element of the crime that an omission would rise to failure to "charge an offense" under Fed.R.Crim.P. 12(b)(2). We note, however, that the requirement appears in a clause beginning "unless" and apparently operates as an exception to criminal liability. 8 U.S.C. § 1326(2). This Court has, in dicta, listed lack of consent as an element of the crime of reentry after deportation. *United States v. Wong Kim Bo*, 466 F.2d 1298, 1303 (5th Cir.1972). Courts in other circuits have not recognized lack of consent as an element of the crime. *Pena-Cabanillas v. United States*, 394 F.2d 785, 789 (9th Cir.1968). This Court has also held that an unobjected-to failure to mention lack-of-consent specifically in *jury instructions* did not rise to the level of plain error. *United States v. Oris*, 598 F.2d 428, 430 (5th Cir.), *cert. denied*, 444 U.S. 945, 100 S.Ct. 304, 62 L.Ed.2d 313 (1979).

1129, 1131 (5th Cir.1981); *United States v. Gonzalez-Parra,* 438 F.2d 694, 697 (5th Cir.), *cert. denied,* 402 U.S. 1010, 91 S.Ct. 2196, 29 L.Ed.2d 433 (1971). Relying on these precedents, the district court refused to consider Campos' attack on his deportation.

Between Campos' trial and the instant appeal, however, the Supreme Court has authorized collateral attacks on deportation orders in prosecutions under 8 U.S.C. § 1326. *United States v. Mendoza-Lopez,* —— U.S. ——, 107 S.Ct. 2148, 95 L.Ed.2d 772 (U.S. 1987). The Court characterized prior deportation as an enhancement element, raising an illegal entry from a misdemeanor to a felony. *Id.,* 107 S.Ct. at 2156 n. 18. An alien accused under section 1326 is in an analogous position to a defendant whose misdemeanor conviction is enhanced to a felony because of a prior uncounselled misdemeanor conviction. *Id.,* citing *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). "[W]here a determination made in an administrative proceeding [, *e.g.,* a deportation hearing,] is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id.,* 107 S.Ct. at 2154. The alien must be able to raise errors in the prior deportation proceeding if the errors are "so fundamental that they may functionally deprive the alien of judicial review." *Id.,* 107 S.Ct. at 2155 n. 17. If the alien can establish such errors, the prior deportation will not be overturned, but the Government may not use that deportation to increase the punishment for illegal reentry. *Id.*

In *Mendoza-Lopez,* the Supreme Court accepted the district court's finding that the defendants were not adequately informed of their rights to appeal and to request suspension of deportation. *Id.,* 107 S.Ct. at 2151. The Court did not specify what other errors would support a collateral attack. *Id.,* 107 S.Ct. at 2155 n. 17. The final issue before this Court is whether a failure to inform Campos of his right to counsel and of the availability of free counsel, if proven, would be the kind of error envisioned in *Mendoza-Lopez.* [2]

■ Because deportation is a civil proceeding, potential deportees have no sixth amendment right to counsel. *Mantell v. United States Department of Justice, I.N.S.,* 798 F.2d 124, 127 (5th Cir.1986); *Paul v. United States I.N.S.,* 521 F.2d 194, 197 (5th Cir.1975). However, an alien has a right to counsel if the absence of counsel would violate due process under the fifth amendment. *Mantell,* 798 F.2d 127; *Paul,* 521 F.2d at 197. Other circuits have reached the same conclusion. *See, e.g., Magallanes-Damian v. I.N.S.,* 783 F.2d 931, 933 (9th Cir.1986); *Cobourne v. I.N.S.,* 779 F.2d 1564, 1566 (11th Cir.1986); *Castaneda-Delgado v. I.N.S.,* 525 F.2d 1295, 1300 (7th Cir.1975). Aliens also have a statutory right to counsel, although not at Government expense, and I.N.S. regulations provide that aliens be told of this right and given a list of free legal services. 8 U.S.C. § 1252(b)(2); 8 C.F.R. § 242.1(c) (1987).

This Court has reversed a deportation order in a case where the alien, although informed of her right to counsel, "waived her rights without being provided with any understanding by the immigration judge of the complexity of her dilemma and without any awareness of the cogent legal arguments which could have been made on her behalf." *Partible v. I.N.S.,* 600 F.2d 1094, 1096 (5th Cir.1979). The *Partible* Court stressed that the laws and regulations determining Partible's deportability were too complex for a pro se alien, and that "the outcome of the proceeding may have been different if counsel had been present." *Id.*

■ Ordinarily, a case overturning established precedent in this Circuit would be

---

2. The Government states that Campos conceded that he was informed of his right to hire a lawyer. However, Campos' counsel stated only that Campos lacked the money to employ a lawyer at the earlier deportation hearing; counsel did not concede that Campos was informed of his right to counsel, was given a list of available free counsel, or waived counsel. Record Vol. 2 at 3. The district court found that there was no evidence that Campos had counsel or waived counsel. Record Vol. 2 at 71.

set for oral argument. However, at this stage of the case, an oral argument panel could do no more than reaffirm two now indisputable abstract propositions: that *Mendoza-Lopez* allows *some* collateral attacks on prior deportation orders, and that, under *Partible, some* deprivations of counsel justify reversal of deportation orders. In the instant case the difficult question is whether the deprivation of counsel, if any, amounted to denial of due process. The record before this Court at the present time is so sparse that this Court cannot even determine whether Campos in fact had counsel at his 1985 deportation hearing. In the interest of the proper administration of justice, it is preferable that the present case be remanded to the district court, without expressing an opinion on the ultimate outcome. Supplied with the facts, this Court may then properly review the district court determinations in an appeal after remand, should there be one.

On remand, the district court must determine: whether Campos was in fact represented by counsel at his 1985 deportation hearing; if not, whether Campos was informed of his right to representation and given a reasonable chance to exercise that right; whether Campos competently waived that right; and whether these deprivations, if established, prejudiced Campos by rendering the deportation hearing fundamentally unfair or denying Campos judicial review under the new *Mendoza-Lopez* standard.

*Mendoza-Lopez* overturned this Court's precedents blocking attacks on prior deportation proceedings in criminal trials under 8 U.S.C. § 1326. Campos' conviction is, therefore, REVERSED, and the case is REMANDED to the district court with directions to reconsider Campos' claims concerning his 1985 deportation.