**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ernest Michael WILSON,**
**Defendant–Appellant.**

No. 88–1893.

United States Court of Appeals,
Fifth Circuit.

Sept. 7, 1989.

Michael Logan Ware, Law Offices of Rickard & Ware, Fort Worth, Tex., for Ernest Michael Wilson.

J. Michael Worley, Asst. U.S. Atty., and Marvin Collins, U.S. Atty., Fort Worth, Tex., for U.S.

Before KING, JOLLY and DUHE, Circuit Judges.

KING, Circuit Judge:

Defendant-appellant, Ernest Michael Wilson ("Wilson"), appeals from his conviction under 18 U.S.C. § 924(c)(1), use or carrying of a firearm during and in relation to a drug trafficking offense. We affirm Wilson's conviction and hold that (1) there was sufficient evidence to establish that Wilson carried a firearm "in relation to" a drug trafficking offense, and (2) the indictment fairly imports the essential elements of the charged offense.

## I.

Wilson was observed approaching a parked Buick Regal which had been under surveillance by Fort Worth police officers in a residential area of Fort Worth, Texas.[1] As Wilson began to enter the vehicle, the officers approached and identified themselves as police. Wilson stepped back and reached toward the center part of his belt in the back of his pants. The officers then "grabbed" Wilson. In the waistband of Wilson's pants, the officers discovered a fully loaded Browning 9mm. automatic handgun. At that point, Wilson was arrested. The arresting officer noticed that Wilson's clothes smelled of phenylsylic acid—a chemical associated with the manufacture of methamphetamine. A search warrant was issued for the vehicle. The search revealed 139 grams of methamphetamine and a notebook containing columns of numbers and names and references to "owes" and "grams."

Wilson was charged on a one count indictment of carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1).[2] He was convicted in a trial by jury after presenting no evidence. Wilson appeals his conviction alleging that (1) there was insufficient evidence to establish that he carried a firearm "in relation to" a drug trafficking offense, and (2) the indictment was fatally defective for failure to allege a scienter element for either the substantive or predicate offense.

## II.

Wilson first contends that his conviction should be reversed because there was insufficient proof that he carried a firearm "in relation to" a drug trafficking offense.[3] In evaluating the sufficiency of the evidence, we look at the evidence in the light most favorable to the government and resolve all credibility inferences consistent with the jury's verdict. *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1348 (5th Cir.1988). The evidence is sufficient to support the jury's verdict if a rational trier-of-fact could have found the essential elements of the charged crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 313–14, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979).

Section 924(c), as originally drafted in 1982, made it an offense to "carr[y] a firearm unlawfully *during* the commission of a felony." 18 U.S.C. § 924(c)(2) (1982) (emphasis added). In 1984, Congress revamped § 924(c) and substituted the phrase "during *and in relation to.*" 18 U.S.C. § 924(c) (1984) (emphasis added). The revision was earmarked to clarify the existing elements of the offense and to:

---

1. The record does not indicate why the automobile was under surveillance. It was later determined that the vehicle was registered in Wilson's wife's name.

2. The predicate drug trafficking offense was 21 U.S.C. § 841(a)(1), possession of a controlled substance with intent to distribute. Wilson, prior to his trial on § 924(c), pleaded guilty in state court to aggravated possession of a controlled substance. However, the district court held that Wilson's guilty plea for the offense in state court was insufficient to establish all the elements of

possession of a controlled substance with intent to distribute under § 841(a)(1). Thus, the government was required to present additional evidence on the predicate drug trafficking offense.

3. This court has previously held that the predicate offense in this case, possession with intent to distribute under 21 U.S.C. § 841(a)(1), is a "drug trafficking offense" for purposes of § 924(c). *United States v. Robinson*, 857 F.2d 1006, 1010 (5th Cir.1988).

preclude [§ 924(c)'s] application in a situation where [a weapon's] presence played no part in the crime....

S.Rep. No. 225, 98th Cong., 2nd Sess. 314 n. 10 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3492 n. 10. As the Ninth Circuit puts it, the "in relation to" language was calculated to avoid convictions for "inadvertently carrying a firearm in an unrelated crime." *United States v. Ramos,* 861 F.2d 228, 231 (9th Cir.1988). Thus, under the current version of § 924(c), the government is shouldered with the burden of establishing some relationship between the firearm Wilson possessed and the predicate drug trafficking offense.

We have previously upheld convictions under § 924(c) where large numbers of firearms were readily available in strategic locations near large quantities of drugs and money—under what has come to be known as the "fortress theory." *United States v. Robinson,* 857 F.2d 1006, 1010 (5th Cir. 1988) (residence contained seven firearms, ammunition, 444 gelatin capsules of cocaine, marijuana and thousands of dollars in cash and jewelry); *see also United States v. Matra,* 841 F.2d 837, 842–43 (8th Cir.1988) (drug house included machine gun, three pistols, an assault rifle, a shotgun, ammunition, over $200,000 in cocaine and $10,000 in cash). In fortress type cases, the sheer volume of weapons and drugs makes reasonable the inference that the weapons involved were carried in relation to the predicate drug offense since they "increase[ ] the likelihood [the drug offense will] succeed." *Robinson,* 857 F.2d at 1010 (*citing Matra,* 841 F.2d at 843).

However, for cases that do not fit within the fortress analogy, something more than strategic proximity of drugs and firearms is necessary to honor Congress' concerns. In *United States v. Raborn,* 872 F.2d 589, 595 (5th Cir.1989), we held that where a defendant actually carried a weapon during drug transactions, a jury could reasonably conclude that the weapon was carried in relation to, and for protection during, drug trafficking crimes. Similarly, in *United States v. Coburn,* 876 F.2d 372, 375 (5th Cir.1989) we held that a jury could reason-

ably conclude that a shotgun, prominently displayed in the rear window of a pickup truck used to distribute marijuana, served as protection in relation to a drug trafficking offense.

In the present case, the district court instructed the jury that a separate element of a § 924(c) violation was that a weapon be carried during and in relation to the predicate drug offense. The government's evidence included testimony that Wilson carried his weapon when entering the vehicle containing methamphetamine, and that when confronted by police, Wilson reached for the weapon. It would not have been unreasonable for the jury to infer that the presence of the weapon and drugs in close proximity, along with Wilson's affirmative act of reaching for the weapon, established that Wilson carried the weapon for protection in relation to his drug activities. Thus, we concluded that there was sufficient evidence to sustain Wilson's conviction.

### III.

Wilson's second contention alleges that his indictment was fatally defective because it failed to state the scienter requirement for either the substantive offense (18 U.S.C. § 924(c)(1)) or the predicate offense (21 U.S.C. § 841(c)(1)). The indictment charged:

On or about August 7, 1987, in the Fort Worth Division of the Northern District of Texas, ERNEST MICHAEL WILSON, defendant, did use or carry a firearm to wit: a Browning High Power Model, ... during and in relation to a drug trafficking crime, that is, a felony violation of federal law involving the possession with intent to distribute methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1).

In violation of Title 18, United States Code, Section 924(c)(1).

In order to address Wilson's contentions, we must determine the scienter required under § 924(c)(1)—an issue of first impres-

sion for this court.[4] At the outset we note that § 924(c)(1) does not explicitly state the scienter required in formal terms such as "knowingly" or "willfully."[5] Wilson contends that the scienter for § 924(c)(1) is, therefore, provided by the default scienter of "willfully" under § 924(a)(1)(D).[6] However, § 924(a)(1), by its terms, excludes subsection (c). Thus, § 924(a)(1) lends no aid to our construction of the scienter element in § 924(c)(1).

In *United States v. Nelson*, 733 F.2d 364, 370–71 (5th Cir.1984), we held that under the former version of § 924(c), the government must prove that a defendant "knowingly carried a firearm...." Our holding in *Nelson* was consistent with the general rule of construction that "knowledge of the facts constituting the

offense[ ] is ordinarily implied" where a "statute does not expressly mention any mental element." *United States v. Barber*, 594 F.2d 1242, 1244 (9th Cir.), *cert. denied*, 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979) (citing *Morissette v. United States*, 342 U.S. 246, 252, 72 S.Ct. 240, 244, 96 L.Ed. 288 (1951) ("wrongdoing must be conscious to be criminal")).

None of the subsequent revisions of § 924(c) casts doubt on our holding in *Nelson*. In fact, subsequent legislative history reaffirms *Nelson*.[7] In 1986, the Firearms Owners' Protection Act set the stage for a revamping of § 924. In assessing the scienter requirements under § 924, it was stated:

> Case law interpreting the criminal provisiors of the Gun Control Act have re-

---

**4.** In *United States v. Coburn*, 876 F.2d 372, 375 (5th Cir.1989), we noted that the indictment in that case stated "lawfully, knowingly, and intentionally" as the mens rea under § 924(c)(1). However, we were not called upon to consider the correctness of the scienter element in the indictment in that case.

**5.** Section 924(c)(1) provides:

> Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a machinegun, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years, and if the firearm is a machinegun, or is equipped with a firearm silencer or firearm muffler, to imprisonment for life imprisonment without release. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried. No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein.
> 18 U.S.C. § 924(c)(1).

**6.** Section 924(a)(1) provides:

> (a)(1) Except as otherwise provided in paragraph (2) or (3) of this subsection, subsection (b), (c), or (f) of this section, or in section 929, whoever—
> (A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;
> (B) knowingly violates subsection (a)(4), (a)(6), (f), or (k) of section 922;
> (C) knowingly imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922(*l*); or
> (D) willfully violates any other provision of this chapter,
> 18 U.S.C. § 924(a)(1).

**7.** The legislative history of the maiden version of § 924(c) is concededly "sparse." *Simpson v. United States*, 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1977). However, a later Congress' understanding of the legislative intent of an earlier Congress is entitled to deference. *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985) (Kennedy, J.), *cert. denied*, 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987); *Bobsee Corp. v. United States*, 411 F.2d 231, 236–37 (5th Cir.1969); *see also* N. Singer, 2A Sutherland Statutory Construction §§ 49.11, 412–14 (rev. 4th ed. 1984) ("[a]lthough comments about an earlier act in a legislative report on a subsequent bill are not part of the legislative history of the earlier act ... they are entitled to consideration").

quired that the government prove that the defendant's conduct was knowing.... It is the Committee's intent, that unless otherwise specified, the knowing state of mind shall apply.... H.Rep. No. 99–495, 99th Cong., 2d Sess. 1, 25–26 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 1327, 1351–52. A proposal that "willfulness" be adopted as the mens rea for certain offenses was "specifically rejected." *Id.* We find this subsequent legislative history to be a reaffirmation of our holding in *Nelson* and an indication of what the authors of § 924(c) intended. Thus, we conclude that the requisite mental state for a violation of § 924(c) is knowledge of the facts constituting the offense.

Having established the scienter requirement under § 924(c), we turn to the merits of Wilson's contention that his indictment was fatally defective for failing to set out the requisite scienter for the substantive and predicate offenses. The Fifth and Sixth Amendments demand that a grand jury indictment set forth each essential element of an offense.[8] *Russell v. United States*, 369 U.S. 749, 763–65, 82 S.Ct. 1038, 1046–48, 8 L.Ed.2d 240 (1962); *United States v. Campos-Ascencio*, 822 F.2d 506, 508 (5th Cir.1987); *United States v. Outler*, 659 F.2d 1306, 1310 (5th Cir.1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 665 (1982).

■ An objection that an indictment fails to state an essential element of a crime may be raised at any time. Fed.R.Crim.P. 12(b)(2); *Campos-Ascencio*, 822 F.2d at 508 n. 1; *United States v. Oberski*, 734 F.2d 1034, 1035 (5th Cir.1984), *cert. denied*, 469 U.S. 1113, 105 S.Ct. 797, 83 L.Ed.2d 790 (1985). However, where, as here, "the defendant demonstrates no prejudice and waits for appeal to assert his challenge, an appellate court will read the indictment liberally." *Campos-Ascencio*, 822 F.2d at

508. Under such circumstances, an indictment will be sufficient "unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted." *United States v. Trollinger*, 415 F.2d 527, 528 (5th Cir.1969) (per curiam).

■ The test of the validity of an indictment is "not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Webb*, 747 F.2d 278, 284 (5th Cir.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985). While a statutory citation cannot, standing alone, meet this test, a citation to the statute "reinforce[s] other references within the indict.nent." *Campos-Ascencio*, 822 F.2d at 508; *United States v. Varkonyi*, 645 F.2d 453, 456 (5th Cir.1981) (citation to statute in indictment "direct[s] the reader" to it). An indictment that tracks the words of a statute is not sufficient "unless those words of themselves fully, directly, and expressly, without any uncertainty of ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *Gordon*, 780 F.2d at 1171. However, "the law does not compel a ritual of words," and a recitation of the exact scienter ("knowing") is not required where the pleading "fairly imports" knowledge. *United States v. Purvis*, 580 F.2d 853, 857–58 (5th Cir.1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979); *United States v. Arteaga-Limones*, 529 F.2d 1183, 1199–1200 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976).

■ The indictment in *Purvis* fully tracked the statutory language (which language did not formally set out the requisite scienter of "intentionally"), and the indictment referred to the relevant statutory citation. Further, since the indictment only

---

8. The Sixth Amendment requires that every criminal defendant "be informed of the nature and cause of an accusation." The inclusion of all essential elements generally fulfills the Sixth Amendment's demands if a defendant is fairly informed of what charge he must be prepared to meet and has sufficient facts to determine whether he may plead double jeopardy. *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986). The Fifth Amendment guarantees a defendant prosecuted for an "infamous" or serious crime a grand jury indictment. *United States v. Outler*, 659 F.2d at 1310. Wilson focuses on the Fifth Amendment guarantee.

tracked the statute, the indictment did not explicitly set out the scienter element.[9] The court ruled that the indictment was sufficient despite the absence of specific words of intent because "[t]aken as a whole, the facts set forth in the indictment here sufficiently allege intent...." *Purvis*, 580 F.2d at 857.

In *Arteaga–Limones*, the defendant argued that his indictment was fatally defective for failing to include the scienter of "knowingly or intentionally." [10] The court held that the indictment was sufficient because "it fairly imports knowledge of in-

tent." *Arteaga–Limones*, 529 F.2d at 1199–200.

The present case is controlled by *Purvis* and *Arteaga–Limones*. The indictment here referred to both the predicate and substantive statutes. The scienter requirements for both statutes, while not present in the statutes,[11] were relatively clear. The mens rea for both § 924(c)(1) and the possession element of § 841(a)(1) was the lowest possible mental state short of strict liability—knowledge of the facts constituting the offense—and the indictment, lib-

9. The indictment in *Purvis* read as follows:

COUNT ONE

From in or about the summer of 1976, to on or about October 12, 1976, in the Southern Division of the Southern District of Alabama, the defendants, THOMAS J. PURVIS, CHARLES C. WIMBERLY, SR., WILLIAM L. SHIRLEY, JR., JOHN C. McCORVEY, JR., HAROLD E. DONALD, HARRY L. HUTTON, JR., JAMES J. MANNING, CECIL E. BYRD and JAMES H. STANFORD, while acting as officials of the Mobile County Sheriff's Department, conspired together, with each other, and with other persons to the Grand Jury known and unknown, to injure, oppress, threaten and intimidate inmates of the Mobile County Jail who were citizens of the United States in the free exercise and enjoyment of the right and privilege secured to them by the Constitution and laws of the United States not to be deprived of life without due process of law, which conspiracy resulted in the death of Louis Wallace, an inmate at the Mobile County Jail.

It was part of the plan and purpose of the conspiracy that the conspirators would, without lawful authority, shoot from ambush one or more of the said inmates during a planned escape attempt which was to occur through a hole dug in the wall of the Mobile County Jail, of which escape attempt the conspirators had prior knowledge.

OVERT ACTS

In furtherance of the aforesaid conspiracy, and to accomplish its objectives, the following overt acts, among others, were committed within the Southern Division of the Southern District of Alabama:

(1) In or about the summer of 1976, at the Mobile County Jail, some of the conspirators decided to shoot an inmate during a future escape in order to bring such escapes to a halt.

(2) On October 12, 1976, prior to the death of Louis Wallace, at the Mobile County Jail, and after discovering that inmates in Cellblock 205 were attempting to dig a hole through the north wall of the jail in order to escape, some of the conspirators, at a staff

meeting, discussed the upcoming escape attempt and agreed not to stop it and to ambush the inmates as they attempted to escape through the hole in the wall, with the intention of shooting one or more of the said in..nates.

(3) On October 12, 1976, at the Mobile County Jail, some of the conspirators caused the north wall of the jail to be surveiled during the day from out of sight of the inmates in order to observe the progress of the escape attempt.

(4) On the evening of October 12, 1986, at the Mobile County Jail, some of the conspirators concealed themselves in the vicinity of the jail in order to carry out the planned ambush and communicated by radio between themselves as to the progress of the digging of the hole in the north wall of the jail.

(5) On the evening of October 12, 1976, at the Mobile County Jail, in furtherance of the aforementioned conspiracy, Deputy Sheriff James H. Stanford shot to death inmate Louis Wallace when Wallace attempted to escape through the hole dug in the north wall of the jail.

In violation of Title 18, United States Code, Section 241.

*Purvis*, 580 F.2d at 856 n. 2.

10. The indictment at issue in *Arteaga–Limones* read as follows:

COUNT TWO

(21 U.S.C. §§ 960(a)(1) & 952(a))

On or about May 5, 1973, the exact date unknown to the grand jurors, in the Western District of Texas, Defendant JOSE DEMETRIO ARTEAGA–LIMONES and Julio Castillo-de la Garza, (the said Julio Castillo-de la Garza being named as a principal but not as a defendant herein), imported and caused to be imported approximately 350 pounds of marijuana, a Schedule I controlled substance.

*Arteaga–Limones*, 529 F.2d at 1199 n. 7.

11. Wilson contends that the indictment failed to address one of the two mental states required for a § 841(a)(1) violation—*knowing* possession with intent to distribute.

erally read,[12] "fairly imports" this marginal mental state. Therefore, we conclude that the indictment sets out the essential elements of the predicate and substantive offenses.

## IV.

Because it is our conclusion that the indictment in this case sufficiently set out the essential elements of the offense, and because the jury's verdict was based upon sufficient evidence, we AFFIRM the district court.

---

**12.** We do not decide here whether an indictment such as the one at bar would survive constitutional scrutiny if objected to before trial. We emphasize that we are constrained to read this indictment "liberally" in light of the defendant's failure to raise this issue at an earlier stage. *Campos–Ascencio,* 822 F.2d at 508.