4 F.3d 994
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Terrell Sherwood COLEMAN, Defendant-Appellant.
 No. 91-2016.
 United States Court of Appeals, Sixth Circuit.
 Aug. 18, 1993.
 
 Before JONES, BATCHELDER, Circuit Judges, and ENGEL, Senior Circuit Judge
 PER CURIAM.
 
 
 1
 Defendant Terrell Sherwood Coleman was convicted by a jury on one count of possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. Sec. 5861(d), two counts of possession with intent to distribute crack in violation of 21 U.S.C. Sec. 841(a)(1), and one count of using or carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. Sec. 924(c). Defendant appeals his conviction, arguing that there was insufficient evidence from which to convict him for use of a firearm during and in relation to a drug trafficking offense and that he was unfairly prejudiced by statements made by the prosecution. For the reasons set out below, we affirm his conviction.
 
 I.
 
 2
 On January 18, 1991, defendant Coleman and two others bought four .12 gauge shotguns for $600 at Parritt's Trading Post in Benton Harbor, Michigan. Subsequently, during a consensual search of a residence to which police had been summoned on a complaint of gunshots having been fired, and from which Coleman was seen fleeing, police uncovered in a garage one of those shotguns, a Sears, which had been sawed off. As a result, a criminal complaint was filed on February 7, 1991, charging Coleman with possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. Sec. 5861(d). Police also obtained an arrest warrant for Coleman.
 
 
 3
 On that day, ATF officers went to Coleman's residence to execute the search warrant. The officers were invited in by Coleman's sister, the owner of the house. The officers went to the basement of the house, where Coleman was living, and found Coleman and two other people, who did not live in the house, standing one to two feet in front of a couch. After officers placed Coleman under arrest and handcuffed him, one officer found two loaded shotguns underneath the couch cushions. These guns were two of the weapons Coleman had purchased on January 18--a Maverick, which had been sawed off to a length of 16 3/4 inches, and a Stevens, which was intact.
 
 
 4
 An officer then conducted a limited search of Coleman incident to his arrest and found a "wad of money" totalling $609 and a vial containing 24 rocks of crack cocaine, weighing 3.519 grams. Coleman then was taken by police car to the police station. After transporting Coleman to the station, an officer--conducting an inspection of the police car as a routine procedure--found a clear plastic bag containing 5.3766 grams of crack cocaine in the back seat of the car. The bag had not been in the car when the transporting officer inspected the car at the start of her shift. Only the transporting officer and Coleman had been in the car between the two inspections.
 
 
 5
 At the police station, Coleman was taken to an interview room, where after being advised of his rights, he agreed to be interviewed. He admitted that he sold crack, that he bought crack the night before, and that he owned the crack in the pill bottle found on him at his house. He also admitted that the two shotguns found in the couch and the Sears shotgun found in the earlier search were his, although he stated that he did not saw them off. He stated that he carried one of the shotguns after it had been sawed off and that he loaned one to friends. At trial, however, Coleman testified that the Sears shotgun found earlier in the garage was not his, and that he owned but never possessed the two shotguns found in the couch. He again admitted that the drugs in the pill bottle were his, but denied ownership of the drugs found in the police car. He denied ever carrying a gun in connection with a drug offense because he stated that he only sold drugs to people he knew and that therefore he did not need protection. He testified that he had not seen his gun for two days prior to his arrest.
 
 
 6
 After trial, a jury convicted defendant on four counts, but acquitted him on one of the two counts of unlawful possession of an unregistered sawed-off shotgun for the gun found in the garage. Defendant now appeals this conviction.
 
 II.
 
 7
 Defendant first argues that there was insufficient evidence from which a jury could find that he knowingly carried or used a firearm during and in relation to a drug trafficking crime. He argues that there is no evidence that a drug deal took place at his house on February 7, the day the guns were found, and no evidence of a connection between the firearms' location and any drug deal. He also argues that there was no evidence that he had knowledge of the firearms because he was merely present in the basement, a living space that he shared with two other people.
 
 
 8
 We find that there was sufficient evidence from which a jury could convict defendant of using or carrying a firearm during and in relation to a drug trafficking offense. Section 924(c) states:
 
 
 9
 Whoever, during and in relation to any crime of violence or drug trafficking crime, ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....
 
 
 10
 18 U.S.C. Sec. 924(c)(1). The "during and in relation to" language is designed to prevent conviction for mere possession of a firearm during the course of criminal conduct; " 'the government is shouldered with the burden of establishing some relationship between the firearm [the defendant] possessed and the predicate drug trafficking offense.' " United States v. Brown, 915 F.2d 219, 224 (6th Cir.1990) (quoting United States v. Wilson, 884 F.2d 174, 176-77 (5th Cir.1989)). The government must show that defendant "knowingly" carried a firearm in that he had "knowledge of the facts constituting the offense." United States v. Wilson, 884 F.2d 174, 179 (5th Cir.1989).
 
 
 11
 Still, we have held that "carries" does not require actual possession and that "uses" does not require brandishment or display. United States v. Acosta-Cazares, 878 F.2d 945, 951 (6th Cir.), cert. denied, 493 U.S. 899, 110 S.Ct. 255 (1989). Instead, "uses" and "carries" are to be broadly construed. Id. at 952. With this in mind, we have adopted the fortress theory, which holds "that if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989). The reasoning behind the fortress theory was stated in Acosta-Cazares, 878 F.2d at 952:
 
 
 12
 Just as weapons are kept at the ready to protect military installations against potential enemy attack, so too may weapons be kept at the ready to protect a drug house, thereby safeguarding and facilitating illegal transactions.
 
 
 13
 Id. (quoting United States v. Matra, 841 F.2d 837, 842 (8th Cir.1988)). Thus, section 924(c) " 'reaches the possession of a firearm which in any manner facilitates the execution of a felony.' " Id. at 952 (quoting United States v. LaGuardia, 774 F.2d 317, 321 (8th Cir.1985)). See United States v. Clark, 928 F.2d 733 (6th Cir.1991) (gun, cash and cocaine found on mattress in defendant's house), cert. denied, 112 S.Ct. 240 (1991); United States v. Acosta-Cazares, 878 F.2d 945 (police found loaded guns in defendant's apartment and apartment where he sold cocaine); United States v. Evans, 888 F.2d 891, 895 (D.C.Cir.1989) (guns within reach and available to protect him), cert. denied, 494 U.S. 1019, 110 S.Ct. 1325 (1990); United States v. Robinson, 857 F.2d 1006, 1010 (5th Cir.1988) (guns found in defendant's home); United States v. LaGuardia, 774 F.2d 317, 321 (8th Cir.1985) (guns stored in glovebox on way to drug deal).
 
 
 14
 Here, the government sustained its burden of showing that defendant Coleman carried or used the guns "during and in relation to" a drug trafficking offense. First, there was clearly sufficient evidence from which a jury could find that the guns were in defendant's control. Defendant admitted that the two guns found under the couch cushions were the ones he had bought in January. Although Coleman shared the basement with two other persons, neither of them was present the day of his arrest and neither of them had bought the guns. The two other people who were present that day did not own the guns or have any possessory interest or control over the basement.
 
 
 15
 Second, there was also sufficient evidence from which a jury could find a connection between the firearms and a drug trafficking offense. In searching Coleman incident to his arrest, an agent found a "wad of money" totalling $609 and a vial containing 24 rocks of crack cocaine, weighing 3.519 grams. Defendant had this quantity of drugs on his person at the time he was standing one to two feet away from the couch cushions where the guns were hidden. In the police car, police also found a clear plastic bag containing 5.3766 grams of crack cocaine. The jury could infer that Coleman also had this quantity of cocaine on him at the time he was in the basement standing near the hidden guns. In addition, in his interview with police, Coleman admitted that he sold crack, that he had bought crack the night before, and that the crack in the pill bottle was his.
 
 
 16
 The crack found on Coleman and in the police car; the money found on Coleman, who was unemployed; the loaded guns hidden under the couch cushions in his living space; and Coleman's admission of selling crack and buying crack the night before are sufficient evidence from which a jury could conclude that defendant "used" the firearm during and in relation to a drug trafficking offense. Defendant was charged and convicted with the drug trafficking offense of possession with intent to distribute cocaine. See Henry, 878 F.2d at 943 (possession with intent to distribute is "drug trafficking offense" under Sec. 924(c)). Under the fortress theory, a jury could have concluded that defendant had the loaded guns under the couch cushions so that he would "have ready access to weapons" to secure and enforce a transaction. Acosta-Cazares, 878 F.2d at 952. Thus, we find that there was sufficient evidence from which a jury could find that defendant violated section 924(c).
 
 III.
 
 17
 Next, defendant argues that the prosecution committed reversible error in its rebuttal closing by vouching for the truthfulness of its witnesses. He contends that by vouching for the witnesses, the government unfairly prejudiced him. We find defendant's argument meritless.
 
 
 18
 At trial, defense counsel made several statements in closing concerning the credibility and motivations of the government's police witnesses. These included:
 
 
 19
 These police officers ... are professionals. They're professional witnesses. They have testified how to get across to you as jurors what they want to say. Police officers are professionals.
 
 
 20
 ....
 
 
 21
 There is an underlying story here. I don't know if some of you picked up on it, but there is an underlying set of facts that for whatever reason that I cannot bring out and Mr. Daniels could not bring out in this trial. There is something that's going on in Benton Harbor. There is a lot of activity going on in Benton Harbor. *994
 
 
 22
 ....
 
 
 23
 Some of you might believe police officers walk on grass and the rest of us walk on concrete because they wear a uniform and carry a gun; and when they say something, it has to be truth. We only have to go to L.A. to find out that's not so....
 
 
 24
 In the government's rebuttal closing, the prosecution stated:
 
 
 25
 What this case boils down to is who are you going to believe? What are you going to believe? The government put on a number of witnesses. The government submits that its witnesses were truthful. They had no reason to lie. They had no ulterior motives. There is no evidence that they're going to get promotions or raises or bonuses or anything because of the way they testified in this case.
 
 
 26
 Defense counsel did not object.
 
 
 27
 Defendant Coleman has failed to preserve this issue for appeal because he failed to object at trial. United States v. Terry, 729 F.2d 1063, 1069 (6th Cir.1984). Therefore, we can reverse based on the prosecution's statements only if the statements constitute plain error "affecting substantial rights" of the defendant. Fed.R.Crim.P. 52(b).
 
 
 28
 Improper comments by the prosecution alone do not justify a reversal of a criminal conviction obtained in an otherwise fair proceeding. In United States v. Young, 470 U.S. 1, 105 S.Ct. 1038 (1985), the Supreme Court stated:
 
 
 29
 [A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be reviewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.
 
 
 30
 Id. at 11, 105 S.Ct. at 1048. Substantial unfair prejudice must be shown. United States v. Davis, 809 F.2d 1194, 1209 (6th Cir.), cert. denied, 483 U.S. 1007, 107 S.Ct. 3234 (1987). A reviewing court may consider, among other things, "the potential of the remarks to prejudice the defendant or confuse the jury and the strength of proof against the defendant." United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990). The prosecutor's improper statements " 'must be so pronounced and persistent that it permeates the entire atmosphere of the trial.' " United States v. Hitow, 889 F.2d 1573, 1579-80 (6th Cir.1989) (quoting United States v. Mahar, 801 F.2d 1477, 1503 (6th Cir.1986)).
 
 
 31
 Here, the prosecutor's statements in rebuttal do not constitute improper vouching for witnesses and were not unfairly prejudicial to the defendant. First, the prosecutor couched the statements in words reflecting opinion, "The government submits ...," and in words focusing on what the evidence showed, "There is no evidence that...." Second, the statements were not prejudicial to defendant and would not have confused the jury. The prosecution was responding to defense counsel's statements in closing that implied that the officers were either untruthful or covering up their true activities concerning defendant. A prosecutor may respond to an argument attacking the motive and credibility of government witnesses. Castro, 908 F.2d at 90. In Castro, the prosecutor made statements in closing about the motivations of its witnesses to be truthful after the defense implied that the government presented perjured testimony. There, we held that the statements were proper and "taken as a whole do not indicate that he was seeking improperly to influence the jury." Id. See also, Davis, 809 F.2d at 1209 (prosecutorial comments do not justify reversal "especially where, as here, the context involves a defense counsel's provocative 'opening salvo' "). Here, the prosecutor was justified in rebutting the defense's statements implying that the officers had ulterior motives in testifying. Even if it had been error to make these statements, the prosecutor's comments clearly were not plain error and did not substantially prejudice defendant.
 
 IV.
 
 32
 For the reasons set out above, we affirm defendant's conviction.