UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-10026
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RONALD EUGENE HENRY,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas
_____

April 10, 2002

Before EMILIO M. GARZA, BENAVIDES, and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

Ronald Eugene Henry appeals his conviction for possession of a firearm while subject to a

court order in violation of 18 U.S.C. § 922(g)(8), alleging, among other things, that the indictment

was defective because it did not allege the scienter element of "knowing" set forth in the

corresponding punishment provision of 18 U.S.C. § 924(a)(2).  Finding no reversible error with

respect to his conviction, we affirm the conviction.  Henry also argues that the district court

committed plain error in calculating his criminal history category.  We agree and vacate and remand

for re-sentencing.

I.    BACKGROUND

In November 1998, deputies from the Potter County Sheriff's Office went to a residence after receiving a "hangup" 911 phone call. Upon arriving, they observed a small child looking out of the front window of the residence, Henry's wife Michelle inside the residence holding a revolver, and Henry. The deputies were familiar with the parties involved because there had been several previously alleged incidents of family violence at the residence.

While inside the residence, the deputies found a Noble Model 222T, .22 caliber rifle in the back utility room. The rifle was loaded with a round in the chamber and had not been manufactured in Texas. Michelle advised the deputies that the rifle was not hers and that Henry had carried the rifle into the residence. Henry possessed additional shells for the rifle on his person.

At the time of the incident, Henry was subject to an agreed protective order issued after a September 1998 hearing of which he had notice and in which he had opportunity to participate. The protective order stated that there had been family violence and there was a continued likelihood of family violence. It found that Henry represented a credible threat to the safety of Michelle and her children. The protective order restrained Henry from "harassing, stalking, or threatening" Michelle or her children and "engaging in other conduct that would place Michelle . . . or her children in reasonable fear of bodily injury." It also prohibited Henry from having any contact with Michelle or her two children (except for visitation as directed by the Family Support Services) and from going within 200 yards of her residence for one year. Henry signed this order, evidencing his agreement to its terms.

Henry was indicted on one count of possession of a firearm while under a restraining order,

2

in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2). The indictment alleged:

> On or about the 14th day of November, 1998, in the Amarillo Division of the Northern District of Texas, the defendant, RONALD EUGENE HENRY, possessed in and affecting commerce a firearm, to wit: a Noble, Model 222T, .22 caliber rifle, which had been shipped or transported in interstate commerce, and at such time RONALD EUGENE HENRY was subject to a court order that was issued after a hearing of which RONALD EUGENE HENRY received actual notice and opportunity to participate at said hearing, and said court order restrained RONALD EUGENE HENRY from harassing, stalking, or threatening Michelle Henry, the former spouse of RONALD EUGENE HENRY, or their children, or engaging in other conduct that would place Michelle Henry or her children in reasonable fear of bodily injury and said court order included a finding that RONALD EUGENE HENRY represents a credible threat to the physical safety of Michelle Henry or her children.
>
> In violation of Title 18, United States Code, Sections 922(g)(8) and 924(a)(2).

Henry moved to dismiss the indictment, arguing that § 922(g)(8) was unconstitutional because it violated the Second and Fifth Amendments to the United States Constitution. Following the Government's response, the district court referred the motion to the magistrate judge for a report and recommendation. The magistrate judge issued a report and recommendation, recommending that the district court deny the motion. Ultimately, the district court denied Henry's motion to dismiss.

Henry pleaded guilty to the indictment pursuant to a plea agreement. The plea agreement contained a provision conditioning Henry's guilty plea on his right to appeal the district court's denial of his motion to dismiss the indictment. The district court accepted Henry's plea and plea agreement, sentencing him to 27 months of imprisonment, three years of supervised release, and a $100 special assessment. Henry timely filed a notice of appeal.

II. ANALYSIS

A. DEFECTIVE INDICTMENT

Henry argues that the indictment is defective because it does not allege that he knew it was

3

unlawful to possess a firearm while under a state court protective order. In the alternative, he argues that even if § 922(g)(8) does not require knowledge that one is violating the law, the indictment is defective for failing to allege that he "knowingly" possessed the firearm while under a restraining order. We quickly dispose of his first argument but his alternative argument merits more attention.

With respect to his first argument, since the filing of Henry's brief, we have determined that the necessary *mens rea* in this context does not require knowledge that one is violating the law but merely of the legally relevant facts. United States v. Emerson, 270 F.3d 203, 215-17 (5th Cir. 2001), *petition for cert. filed*, (Feb. 28, 2002) (No. 01-8780).[1] In view of Emerson, the indictment was not fatally defective for failing to specifically allege that Henry knew it was against the law to possess a firearm while under a state court protective order.

As stated, Henry alternatively contends that his indictment is insufficient because it did not allege every element of the offense of conviction. This Court reviews *de novo* a challenge to the sufficiency of an indictment. United States v. Cabrera-Teran, 168 F.3d 141, 143 (5th Cir. 1999). "An indictment's failure to charge an offense constitutes a jurisdictional defect." Id. "Because an indictment is jurisdictional, defendants at any time may raise an objection to the indictment based on failure to charge an offense, and the defect is not waived by a guilty plea." Id. (internal quotation marks and citation omitted). If an objection to the indictment is "raised for the first time on appeal and the appellant does not assert prejudice, that is, if he had notice of the crime of which he stood accused, t he indictment is to be read with maximum liberality finding it sufficient unless it is so defective that by any reasonable construction, it fails to charge the offense for which the defendant

---

[1] We also rejected the argument that such a construction of § 922(g)(8) violated the Due Process Clause of the Fifth Amendment. Id. at 215-17.

4

is convicted." United States v. Fitzgerald, 89 F.3d 218, 221 (5th Cir. 1996). "Practical, not technical, considerations govern our inquiry." Id. "To be sufficient, an indictment must allege each material element of the offense; if it does not, it fails to charge that offense." Cabrera-Teran, 168 F.3d at 143. "This requirement stems directly from one of the central purposes of an indictment: to ensure that the grand jury finds probable cause that the defendant has committed each element of the offense, hence justifying a trial, as required by the Fifth Amendment." Id.

Henry concedes that his indictment must be read with maximum liberality because he is raising this contention for the first time on appeal. Section 922(g)(8) states in pertinent part:

(g) It shall be unlawful for any person–

(8) who is subject to a court order that–

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(I) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury[,]

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The scienter element of § 922(g)(8) is found in § 924(a)(2), which states that "[w]hoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not

5

more than 10 years, or both." § 924(a)(2) (emphasis added).

The Government concedes that "[t]here is no mens rea allegation in the indictment." Nevertheless, the Government maintains that the indictment is sufficient because (1) it cited the relevant statutes of the offense of conviction, §§ 924(a)(2) and 922(g)(8); (2) the district court notified Henry of the scienter element at the plea colloquy; and (3) the signed factual resume notified Henry of the scienter element.

The fact that Henry received notice of the scienter element from the plea colloquy or the factual resume is inconsequential. A defendant's notice of an element not alleged in an indictment does not cure an insufficient indictment. See Cabrera-Teran, 168 F.3d at 144-45 (noting prior holding that "element's absence from the indictment [is] fatal, irrespective of the government's post-indictment proffer of evidence and the defendant's notice of the offense charged").

The fact that the indictment contained statutory citations to the offense of conviction does not necessarily cure an otherwise defective indictment. "[S]tatutory citations may not stand in place of the inclusion of an element of the crime." See Cabrera-Teran, 168 F.3d at 145. However, such citations may "reinforc[e] terms that may be liberally construed to refer to the missing element." Id. at 145-46.

Research did not reveal a case in which the scienter element was omitted from an indictment charging the instant offense. Thus, we must look for guidance in our cases involving failure to allege scienter with respect to other offenses. In United States v. Arteaga-Limones, the appellant argued that the indictment was defective for failing to allege that the importation of marijuana was "knowingly or intentionally" committed as set forth in the statute. 529 F.2d 1183, 1199 (5th Cir. 1976). We acknowledged that "[a]n indictment is defective if it fails to allege scienter elements

6

expressly contained in the pertinent statute." Id. We explained, however, that "the elements need not be alleged in terms, and a pleading is good if it fairly imports knowledge or intent." Id. We found that the language in the indictment "caused [the marijuana] to be imported," when reinforced by the statutory reference fairly conveyed the mens rea element. Id. at 1199-2000.[2]

In United States v. Wilson, 884 F.2d 174 (5th Cir. 1989), the appellant argued that the indictment was defective for failing to allege the scienter requirement with respect to the offense of use or carrying a firearm during and in relation to a drug trafficking offense. See 18 U.S.C. § 924(c)(1); 21 U.S.C. § 841(c)(1). Neither the predicate nor the substantive statute explicitly set forth the scienter required. We determined that the "requisite mental state for a violation of § 924(c) is knowledge of the facts constituting the offense." Wilson, 884 F.2d at 179. As in the case at bar, we read Wilson's indictment with maximum liberality. We concluded that although the scienter requirement was not expressly contained in the predicate and substantive statutes, it was "relatively clear." Id. at 180. We also observed that the indictment cited to the statutes. Thus, we held that the indictment, read with maximum liberality, "'fairly imported' this marginal mental state." Id. at 180-81. Likewise, the Second Circuit has determined that the language of § 924(c) fairly imported the scienter requirement and thus the indictment was not defective for failing to include a mens rea allegation. United States v. Santeramo, 45 F.3d 622 (2d Cir. 1995). The Second Circuit explained that "a person cannot have possession or control of a firearm and allow the firearm to play a role in the crime unless the person knew of the firearm's existence.'" Id. (internal quotation marks and citation omitted).

---

[2] At least, this is the interpretation we have given the rather truncated analysis in Arteaga-Limones. See Cabrera-Teran, 168 F.3d at 146.

Although Santeramo and Wilson, both of which involve a section 924(c) violation, are not controlling, they are instructive with respect to Henry's contention that his indictment was fatally defective for failing to allege "knowingly." Henry argues that simply alleging that he "possessed" a firearm does not allege scienter because possession can be unknowing. We do not agree that the indictment alleges only "possession." Our case law instructs us to consider all the allegations in the indictment when determining whether knowledge is fairly imported. Essentially, the indictment alleges that Henry possessed a firearm at a time when he was subject to a court order issued after a hearing--of which he received actual notice and an opportunity to participate--and the court order "restrained [Henry] from harassing, stalking, or threatening Michelle Henry, . . . or their children, or engaging in other conduct that would place Michelle Henry or her children in reasonable fear of bodily injury and said court order included a finding that [Henry] represents a credible threat to the physical safety of Michelle Henry or her children."[3]

While it is true that the allegations may not necessarily encompass a finding of knowledge, we have determined that a knowledge requirement may be inferred. In Berrios-Centeno, the defendant was charged in an indictment with one count of being present in the United States as a previously deported alien in violation of 8 U.S.C. § 1326(a) and (b)(2), which does not contain an explicit mens rea element. 250 F.3d 294 (5th Cir. 2001). The indictment did not allege any intent element, and the defendant moved to dismiss on that basis. On appeal, we determined that the offense was, like the instant offense, a general intent offense and that the mens rea element was material or essential. Nonetheless, we concluded the indictment's allegations that the defendant was

---

[3] Although it is not relevant to our inquiry, the indictment also alleges that the firearm had been shipped or transported in interstate commerce.

8

deported, removed, and subsequently present in the United States without the consent of the Attorney General fairly conveyed the defendant's presence was a voluntary or knowing act.[4] We now observe that, in theory at least, those allegations might encompass an act that was not voluntary (such as being kidnapped and forced to re-enter the United States).

Similarly, the allegations in the instant indictment could, in theory, encompass possession that was not "knowing." However, as previously set forth, because Henry can show no prejudice, we are to read the indictment with maximum liberality and find it sufficient unless it is so defective that by any reasonable construction, it fails to charge the offense for which he was convicted. A reasonable construction of the indictment is that knowledge could be inferred with respect to Henry's possession of the firearm because an "unknown" possession would not appear to be relevant to the behavior prohibited by the agreed protective order, *i.e.,* harassing, stalking, or threatening. In sum, although the term "knowingly" was omitted from the indictment, we are persuaded that the facts set forth in the indictment (reinforced with the appropriate statutory citation), read with maximum liberality, fairly imported the knowledge requirement contained in the statute. Under these circumstances, Henry has not shown that the indictment was fatally defective. We of course express no opinion whether the indictment would be sufficient if not read with maximum liberality.

In the further alternative, Henry argues that even if this Court upholds the indictment, the factual basis is insufficient to demonstrate either that he knowingly possessed the firearm or that he knew he was under a state court restraining order at the time of the alleged possession. We disagree.

With respect to Henry's knowledge of possession of the gun, the factual basis provided that

---

[4] We note that because the defendant had objected the indictment was not read for maximum liberality.

9

"Michelle Henry advised the rifle was not hers and that Ronald Henry had carried it into the residence. Ronald Henry had additional shells for the rifle in his possession." After the prosecutor read the factual basis at the guilty plea hearing, the court asked Henry whether everything in the factual basis was true. Henry responded affirmatively. The factual basis established that Henry knowingly possessed the firearm.

With respect to the restraining order, the factual basis provided that:

> Ronald Eugene Henry was subject to a protective order issued September 15, 1998, following a hearing before Judge Richard Danbold. The protective order stated that there had been family violence, and a continued likelihood of continuing family violence and prohibited Ronald Henry from having any contact with Michelle Henry or her two children or from going within two hundred yards of the residence on Horseshoe Lane for one year.

As stated, Henry admitted that everything in the factual basis was true. Henry argues that these facts do not establish that he knew he was under a state court restraining order at the time of the alleged possession. The record reflects, however, that Henry signed the agreed protective order approximately two months prior to the date of the instant offense. This contention is wholly without merit.

### B.    SECOND AMENDMENT CLAIM

Henry next argues that § 922(g)(8) violates the Second Amendment because it interferes with the right to keep and bear arms. He contends that § 922(g)(8)'s infringement of that right is not justified by a compelling governmental interest. In Emerson, this Court determined that the application of section 922(g)(8) to Emerson did not violate his Second Amendment rights. 270 F.3d at 260-64. We explained that "Congress in enacting section 922(g)(8)(C)(ii) proceeded on the assumption that the laws of the several states were such that court orders, issued after notice and

10

hearing, should not embrace the prohibitions of paragraph (C)(ii) unless such either were not contested or evidence credited by the court reflected a real threat or danger of injury to the protected party by the party enjoined." Id. at 262. We concluded that Texas law meets these general minimum standards as a Texas state court may not issue a temporary restraining order unless the evidence clearly establishes that the applicant is threatened with an actual, irreparable injury. Id. at 262-63. We further held that we were precluded from conducting a collateral review of the validity of the state order, provided that the order is not so "transparently invalid" as to have "only a frivolous pretense to validity." Id. at 263-64. Ultimately, we held that the nexus between the firearm possession by the party so enjoined and the threat of lawless violence was sufficient ("though likely barely so") to support the deprivation of the enjoined party's Second Amendment right to keep and bear arms. Id. at 264. Henry has not shown that the district court erred in denying his motion to dismiss the indictment on the ground that it violated his Second Amendment right to keep and bear arms.[5]

C.    SENTENCING

Admitting that he failed to object below, Henry contends that the district court committed plain error in performing his criminal-history calculation. If a defendant fails to object properly at

_____

[5] Henry also contends that § 922(g)(8) is unconstitutional because it violates the Commerce Clause. Specifically, he argues that § 922(g)(8) does not require a "substantial" effect on interstate commerce. In the alternative, Henry contends that the statute is unconstitutional as applied to him. He argues that the indictment fails to allege and the factual basis for his guilty plea does not support a finding of a substantial effect on interstate commerce.

In United States v. Pierson, 139 F.3d 501, 503-04 (5th Cir. 1998), this Court held that § 922(g)(8) was a constitutional exercise of Congress's power under the Commerce Clause and that § 922(g)(8) was constitutionally applied to a defendant who possessed firearms that were manufactured out-of-state. Henry concedes that his contentions are foreclosed by our precedent. He raises the arguments to preserve them for further review.

11

sentencing, he waives his right to full appellate review, and this Court reviews only for plain error. See United States v. Krout, 66 F.3d 1420, 1434 (5th Cir. 1995). "In order to show plain error, the appellant must show that there was an error, that it was plain (meaning 'clear' or 'obvious') and that the error affects substantial rights." Id.

Henry argues that the district court plainly erred by including two points in his criminal-history calculation for a prior one-year sentence for criminal trespass that was imposed upon an adjudication of guilt for conduct that was part of the offense of conviction. In performing the criminal history calculation, the district court adds two points "for each prior sentence of imprisonment" of at least sixty days and not exceeding one year and one month. U.S.S.G. § 4A1.1(a) and (b). "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt" provided that the sentence is "for conduct not part of the instant offense." Id. § 4A1.2(a)(1).

The Government concedes that the district court erroneously included two points in Henry's criminal-history calculation for a prior sentence that was imposed upon an adjudication of guilt for conduct that was part of the offense of conviction. The Government further urges this Court to remand Henry's case for re-sentencing. We agree. The district court committed plain error by including two points in Henry's criminal-history calculation. Henry's state conviction for criminal trespass and federal conviction for possession of a firearm while under a restraining order clearly resulted from the same conduct on November 14, 1998. Accordingly, we vacate and remand Henry's sentence for further proceedings.

D.      CONCLUSION

For the above reasons, we AFFIRM the district court's judgment of conviction and VACATE and REMAND Henry's sentence for re-sentencing.