**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James HART, Defendant-Appellant.**

**No. 80–5120.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 10, 1980.

Decided Feb. 12, 1981.

Certiorari Denied May 18, 1981.
See 101 S.Ct. 2334.

Thomas Wilhelm, Kenneth Sasse, Detroit, Mich., for defendant-appellant.

James K. Robinson, U. S. Atty., Martin E. Crandall, Detroit, Mich., for plaintiff-appellee.

Before ENGEL and BROWN, Circuit Judges; MARKEY, Chief Judge, Court of Customs & Patent Appeals.*

BAILEY BROWN, Circuit Judge.

Appellant James Hart was indicted and convicted by a jury in the United States District Court for the Eastern District of Michigan on two counts of possessing stolen mail in violation of 18 U.S.C. § 1708 (1976).[1] There was substantial evidence upon which the jury could base a guilty verdict, and no question about the sufficiency of the evidence is presented here.

Hart challenges his conviction on three grounds in this appeal. His first challenge deals with the sufficiency of the indictment. Count One of the indictment (which is identical to Count Two except that the date, payee and number of the check are different) reads as follows:

That on or about March 28, 1977 at Detroit, in the Eastern District of Michigan, Southern Division, JAMES HART, defendant herein, did knowingly, unlawfully and wilfully possess State of Michigan Warrant No. 16837422 payable to Cynthia Grimes, said warrant having been properly addressed and mailed to said payee, in violation of Title 18, United States Code, Section 1708.

Hart argues that the indictment does not allege a crime. In order to prove a Section 1708 possession charge the government must establish three things: (1) possession by the defendant, (2) of property stolen from the mail, (3) which the defendant knew to be stolen. *Blue v. United States*, 528 F.2d 892 (8th Cir. 1976). Hart argues that the indictment only charges him with possession of the property and does not charge either that the property was stolen from the mail or that he knew it was stolen property.

There are two considerations which require that an indictment charge all the elements of the crime. The first of these is the defendant's right to be protected from double jeopardy. The second consideration is the defendant's right to be indicted by a grand jury and that the grand jury find probable cause as to each element of the crime.

This contention that the indictment is insufficient was not raised at trial or any other time prior to this appeal. Under Rule 12(b)(2), Fed.R.Cr.P., however, the sufficiency of the indictment may be challenged at any time, and, therefore, there has been no waiver of this issue by Hart. If, however, an indictment is not challenged until appeal, it will be construed liberally in favor of its sufficiency. *United States v. Gibson*, 513 F.2d 978 (6th Cir. 1975). Furthermore, unless the defendant can show prejudice, a conviction will not be reversed where the indictment is challenged only after conviction unless the indictment cannot

---

* Honorable Howard T. Markey, Chief Judge, Court of Customs and Patent Appeals, sitting by designation.

1. 18 U.S.C. § 1708 provides in pertinent part:

Whoever steals, takes, or abstracts, . . . from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag or mail, any article or thing contained therein, . . . ; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

within reason be construed to charge a crime. *United States v. Thompson*, 356 F.2d 216, 225–27 (2d Cir. 1965).

■ It is clear that Hart was not prejudiced by the use of this indictment. From the outset the government acknowledged that it had to prove all three elements of the offense and introduced evidence to establish all of the elements. The charge to the jury specifically required proof of all three elements, and both government and defense counsel, recognizing the necessity of the government's proving all three elements, discussed all three elements of the offense during their arguments to the jury. Indeed, Hart does not allege prejudice as a result of the use of the indictment.

We agree with Hart that the indictment is, to say the least, unartfully drafted. There is no question that the indictment does not expressly charge either that the checks were stolen from the mail, or that Hart knew the checks were stolen. Since, however, we must construe the indictment in favor of its sufficiency and must uphold the sufficiency if it can reasonably be construed to charge the crime of which Hart

was convicted, we conclude that the sufficiency of this indictment must be upheld.

The indictment charges Hart with, in substance, wilfully and unlawfully possessing a check that had been mailed to Cynthia Grimes, in violation of 18 U.S.C. § 1708. It can be determined, by reference to the statute, that in order to possess property in violation of Section 1708 the property must be stolen from the mail and the possessor must know the property had been stolen. By reference to the statute it is within reason to construe the indictment to charge a crime, and, since Hart was not prejudiced, the conviction should not be reversed. *United States v. Emler*, 570 F.2d 584 (6th Cir. 1977), *cert. denied*, 435 U.S. 927, 98 S.Ct. 1496, 55 L.Ed.2d 523 (1978).

■ Hart's second argument is that he is entitled to have his conviction reversed because of prosecutorial expression of personal belief during closing argument. Hart argues that this deprived him of a fair trial because the prosecutor was, in essence, asking the jury to rely on the prosecutor's beliefs to convict Hart. There are fifteen statements that are claimed to be impermissible expressions of personal opinion.[2] Of

2. The fifteen statements are as follows:

1. "I filled in that first box in the matrix ..." [The prosecutor, in closing argument, asked the jury to picture a matrix consisting of a square of nine boxes. Along one axis he put the three elements of the offense and along the other axis he put the three counts of the indictment.]

2. "The evidence is clear and convincing. I suggest you take a look at it."

3. "We had Cynthia Grimes up there, no motive to tell a lie. We had Anna Mary Cheatom, no motive to tell a lie."

4. "Was Cheatom impeached ... I don't think she lied, but you make that determination."

5. "So, I think I have just filled in, but you make that determination, the whole second column of that matrix."

6. "I suggest, ladies and gentlemen, with those facts, I have filled in each of the nine requisite boxes to make out a conviction on all three counts."

7. (referring to the document examiner) "You determine and weigh his credibility. I would say I thought he was meticulous. That's not relevant, it's what you think is relevant, important and material. You determine what he said, but just remember his

qualifications, and Judge Thorton qualified him as an expert after we put his background into the case."

8. "Counsel made much note of the fact that there is a slant in all the exemplars and in the questioned document. I think Mr. McKasson covered that very thoroughly on redirect examination."

9. "I ask you to take these checks into the jury room and take a very close look at them. I think they are convincing."

10. "I think that helps us fill in that box."

11. "I think that helps us fill in this box."

12. "Another thing that bothers me and I hope bothers you is the fact that Mr. McKasson testified that this check was endorsed in the name of Cynthia Grimes by his intimate friend Tonya Doss. I think that makes Mr. Hart guilty as to count one."

13. "I submit that box is filled."

14. "But I submit she knows it was stolen because her intimate friend is the one that signed it in the first endorsement."

15. "Ladies and gentlemen, I think the completion of the matrix in the fashion I did is a means that you could use to come to the same conclusions, although you, of course, use your own means. I looked for any con-

these fifteen, we think it clear that there is nothing improper about numbers 1, 2, 3, 5, 6, 8, 10, 11, 13, 14 and 15. The remaining statements (4, 7, 9 and 12), however, are expressions of personal belief by the prosecutor and are improper. The government is apparently willing to concede that these statements are not proper, but argues that they do not constitute reversible error because the abuses were not flagrant or prejudicial, and Hart did not object to the statements at trial.

The standard by which statements of personal belief by a prosecutor are to be tested is set forth in *United States v. Bess*, 593 F.2d 749 (6th Cir. 1979). There we stated:

> We do not adopt a *per se* reversible error rule, however. The threshold determination should be whether counsel's comments can be reasonably construed to be based on personal belief. If so, the statements should ordinarily be deemed to be error. More commonly, however, the complained-of conduct will not rise to reversible error, notably if it is not flagrant, where proof of guilt is overwhelming, where counsel does not object and/or where the trial judge steps in and admonishes the jury.

*Id.* at 756–57. We do not believe these statements taken individually or collectively constitute reversible error. It is apparent from reading the entire closing argument that the prosecutor liberally used the phrase "I think." Putting these statements into context it is possible to view the "I think" as simply a matter of oratorical style rather than an indication of an intent to express personal opinion. This, however, does not make such statements proper. We conclude, though, that the statements were not flagrant abuses. Moreover, Hart did not object to a single statement at trial.

As we stated in *Bess*, the standard announced there as to what constitutes reversible error is flexible, and the reason is to place the basic responsibility on the trial judges to resolve this problem. If Hart had objected, the trial court could have admonished the prosecutor. Since the statements

were not flagrant abuses and since Hart failed to object we decline to reverse on this ground.

■ Hart's final argument is that the court's charge on reasonable doubt shifted the burden to the defense to establish reasonable doubt. There was some argument that Hart did not sufficiently object to this instruction to raise it on appeal, but we believe there was an adequate objection to preserve the issue. The instruction in question reads as follows:

> You have heard a lot about reasonable doubt. Reasonable doubt is a doubt founded in reason, and arising from the evidence. Not a mere hesitation of the mind to pronounce guilt because of the punishment that may follow. The punishment, if any, is for the Court. Not a mere capricious doubt or hesitancy of the mind to say this man did so and so, but it must be a doubt founded in reason and arising from the evidence, and you can't go outside the evidence that you have heard and seen in this case to make any kind of a determination.

Hart's objection to this instruction really has two parts. He argues first that the instruction does not adequately define reasonable doubt and second, that the instruction improperly shifts the burden of proof from the government to him. Although the instruction does not go into a detailed definition of reasonable doubt, we think the definition is adequate and conveys the essential concepts.

Hart's basic complaint, though, is not that reasonable doubt was inadequately defined but that the instruction did not require the government to prove absence of reasonable doubt, thereby shifting the burden of proof. Hart relies primarily on *Dunn v. Perrin*, 570 F.2d 21 (1st Cir. 1978) to support his contention that this instruction shifted the burden of proof. In *Dunn* the trial court defined reasonable doubt as "a strong and abiding conviction as still remains after careful consideration of all the facts." In reversing, the First Circuit

ceivable satisfactory explanation for these defendants to possess these checks bearing

payee's names that they don't know."

said that this instruction required the defendant to prove reasonable doubt instead of requiring the government to prove guilt. The distinction, however, is that by requiring "strong and abiding" doubt this instruction requires more than reasonable doubt. Here the court only required that the doubt be founded in reason and arise from the evidence.

The gravamen of Hart's complaint is that the instruction told the jury it could not look beyond the evidence to find reasonable doubt. In *Ashe v. United States*, 288 F.2d 725 (6th Cir. 1961), this court held that a failure to specifically charge that "want of evidence" is a sufficient basis for reasonable doubt is not error where, as here, the court had instructed the jury that the burden was on the government to prove each and every element of the crime beyond a reasonable doubt.

We do not think the instruction given here, taken in the context of the instructions as a whole, shifted to Hart the burden of proving reasonable doubt. The judge, in other parts of the charge, told the jury, among other things, that the government had the burden of proving each element of the offense beyond a reasonable doubt, that Hart had no burden of producing any evidence and that if two conclusions could be reached the jury should reach a verdict of innocent.

While we uphold this reasonable doubt charge, we think that it would have been much better if the district judge had given the charge offered by either the defense or the government.[3] Both of those instructions (which are similar) provide a much better definition of reasonable doubt than the instruction actually given and also

---

3. The Defendant's requested instruction read:
   *Reasonable Doubt*:
   The indictment or formal charge against a defendant is not evidence of guilt. The defendant is at present presumed innocent. The government has the burden of proving him guilty beyond a reasonable doubt, and if it fails to do so you must acquit him.
   It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is doubt based upon a reason and common sense—the kind of doubt that would make a reasonable person hesitate to act.
   It exists as a real doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.
   The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture.
   The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant; for the law never imposes upon a defendant in a criminal case the burden of calling any witnesses or producing any evidence.
   So if the jury, after careful and impartial consideration of all the evidence in the case, is left with a reasonable doubt that a defendant is guilty of the charge, it must acquit.
   The prosecution's requested instruction read:
   BURDEN OF PROOF—REASONABLE DOUBT
   The law presumes a defendant to be innocent of crime. Thus, a defendant, although accused, begins trial with a "clean slate"—with no evidence against him. And the law

permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit a defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.
   It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to reply and act upon it in the most important of his own affairs.
   The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture.
   The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant, for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.
   So, if the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that a defendant is guilty of the charge, it must acquit. If the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury should of course adopt the conclusion of innocence.

define more clearly the government's burden of proving absence of reasonable doubt.

For the reasons stated above the judgment of the district court is affirmed.