48 F.3d 1220
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Steven Ray BRIGHT; and Larry Eugene Dozier, Jr.,
Defendants-Appellants.
 Nos. 94-5166, 94-5167.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1995.
 
 Before: MERRITT, Chief Judge; and KEITH and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Steven Bright and Larry Dozier appeal their convictions on several drug-related and firearms charges.
 
 
 2
 A grand jury charged Bright and Dozier with: (1) conspiracy to distribute marijuana, in violation of 21 U.S.C. 846; (2) possession of marijuana with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2; and (3) possession of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. Sec. 924(c). A fourth count charged Dozier with possession of marijuana in violation of 21 U.S.C. Sec. 844.
 
 
 3
 Dozier pled guilty to counts 1, 2, and 4. He contested count 3, the firearm charge. At trial, a jury convicted Dozier on count 3 and Bright on the three counts against him. For the reasons set out below, we affirm.
 
 
 4
 * On February 2, 1993, Doug Hammonds, an informant for the Kentucky State Police, went to the home of Steve Bright. Trooper John Reynolds, posing as a drug dealer named "Rick," accompanied Hammonds. Bright took "Rick" and Hammonds to Larry Dozier's trailer (Bright referred to Dozier by his alias "Hippie Shake"). Hammonds and "Rick" secretly taped the conversation with Bright and Dozier. The conversation included negotiations for the purchase of twenty pounds of marijuana by "Rick" from Bright and Dozier.
 
 
 5
 The parties scheduled the purchase for February 5, 1993 at Dozier's trailer. Hammonds went to the trailer early, on the pretense of insuring that the drugs were ready so that his buyer, "Rick," would not have to wait. Bright and Dozier were at the trailer when Hammonds arrived, but the drugs were not there. However, Bright and Dozier said they still planned to make the delivery. While at the trailer, Hammonds heard Bright and Dozier mention "not trusting Rick." Bright subsequently went to his truck and returned with a 12-gauge shotgun, which he loaded with buckshot. After Bright brought in the shotgun, he and Dozier made references to using it in the event "Rick" tried to rip them off. Dozier placed the gun in a corner behind the door.
 
 
 6
 Hammonds left, and called Trooper Reynolds to warn him about the gun. Reynolds decided not to do the buy/bust, but instead raid the trailer when the drugs arrived. Reynolds obtained a search warrant for the raid. When a third party, Jason Miller, arrived at Dozier's trailer with the marijuana, Hammonds informed Reynolds. The police raided the home and arrested Dozier, Bright, and Miller.
 
 
 7
 After their arrest, Officer Gary Partin interrogated Bright and Dozier. Bright alleges that during the interrogation, Dozier told Officer Partin that Bright had brought the gun to his trailer because Dozier was interested in buying it, and that it had nothing to do with any drug deal.
 
 
 8
 At trial, the government played the tape of the conversation between Dozier, Bright, Hammonds, and "Rick." Hammonds and Officer Reynolds ("Rick") both identified Bright and Dozier as the voices on the tape. On the second day of trial, out of the presence of the jury, Dozier pled guilty to counts 1, 2 and 4. He elected to contest only count 3, the firearms charge.
 
 
 9
 In his opening statement,[1] Dozier's attorney informed the jury that his client was "not contesting his guilt" on counts 1, 2, and 4. Then, at the conclusion of all the evidence, the judge proposed instructions that included a brief statement that Dozier had pleaded guilty to the three counts, that the jury did not have to decide his guilt as to those counts, and that the guilty plea should not be used as evidence against any other defendant. Bright objected because he felt the jury would draw an inference prejudicial to him from Dozier's plea. The district court overruled the objection and gave the instruction. The jury subsequently convicted Bright and Dozier on all of the counts.
 
 II
 
 10
 Following the conclusion of the government's case, Dozier's attorney, for the first time, objected to the wording of the indictment. The indictment charged that Bright and Dozier " 'possessed' a firearm during a drug trafficking offense." The statute the indictment charged them with violating, 18 U.S.C. Sec. 924(c), reads:
 
 
 11
 ... whoever, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, uses or carries a firearm ...
 
 
 12
 The defense argued that the wording of the indictment was legally insufficient. The district court overruled the objection.
 
 
 13
 Bright and Dozier renew this argument on appeal. They argue that the indictment fails to meet the requirement of Fed.R.Crim.P. 7(c). In particular, they allege that the use of the term "possess" rather than the phrase "use or carry" means that the indictment is not "a plain, concise and definite written statement of the essential facts constituting the offense charged." See Fed.R.Crim.P. 7(c). Therefore, the indictment failed to state a crime.
 
 
 14
 To pass constitutional muster, an indictment must satisfy a two-part test. First the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces. Second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts. Russell v. United States, 369 U.S. 749, 763-64 (1962); United States v. Martinez, 981 F.2d 867, 872 (6th Cir.1992), cert. denied, 113 S.Ct. 1874 (1993).
 
 
 15
 Generally, the test is not whether "the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." United States v. Webb, 747 F.2d 278, 284 (5th Cir.1984), cert. denied, 469 U.S. 1226 (1985); United States v. Wilson, 884 F.2d 174, 179 (5th Cir.1989). An indictment will be sufficient where "it permits the defendant to obtain 'significant protections which the guarantee of a grand jury indictment was intended to confer.' " United States v. Gray, 790 F.2d 1290, 1296 (6th Cir.1986). See also United States v. Piccolo, 723 F.2d 1234, 1238 (6th Cir.1983), cert. denied, 466 U.S. 970 (1984). Several factors lead to the conclusion that the indictment in this case meets the constitutional requirements. These include Bright and Dozier's delay in objecting, the inclusion of a citation to the relevant statute, and the lack of prejudice to either Bright or Dozier.
 
 
 16
 Challenges to the sufficiency of an indictment may be raised any time. Fed.R.Crim.P. 12(b)(2); See United States v. Hart, 640 F.2d 856, 857 (6th Cir.), cert. denied, 451 U.S. 992 (1981). However, if a defendant waits to press his claim, he faces a higher standard. See Hart 640 F.2d at 857 ("If, however, an indictment is not challenged until appeal, it will be construed liberally in favor of its sufficiency"). Here the challenge came before appeal, but after jeopardy attached. The purpose of construing an indictment liberally is to prevent the type of sandbagging evident here. That is, the defendant, fully aware of the charge he faces, but knowing there is a technical defect in the indictment, waits until jeopardy attaches before objecting.
 
 
 17
 The indictment also includes a citation to the relevant statute. While a citation to the statute without alleging facts will not suffice, see United States v. Campos-Asencio, 822 F.2d 506, 508 (5th Cir.1987), such a reference does "reinforce other references within the indictment." Id. See also Wilson, 884 F.2d at 179; United States v. Varkonyi, 645 F.2d 453, 456 (5th Cir.1981) (citation to the statute in indictment "direct[s] the reader" to the statute).
 
 
 18
 The Sixth Circuit has reached a similar result. In United States v. Martinez, the court addressed the failure of the indictment to allege any mens rea. The court held that "although the indictment does not expressly allege willfulness, it does allege the appropriate sections of the United States Code. We believe that the citation to the statutes informed Escamilla [the defendant] of the elements of the charged offenses." Martinez, 981 F.2d at 872. See also United States v. Johnson, 414 F.2d 22, 26 (6th Cir.1969), cert. denied, 397 U.S. 991 (1970). Similarly, in United States v. Hart, the court addressed the failure of an indictment to allege that a check was stolen from the mail and that the possessor knew it had been stolen. The court held that "[b]y reference to the statute it is within reason to construe the indictment to charge a crime...." Hart, 640 F.2d at 858.
 
 
 19
 The indictment charges that Bright and Dozier violated "T. 18 U.S.C. Secs. 924(c) and 2." It cites the statute twice. Furthermore, the language of the count does not implicate simple possession of a firearm, as claimed by Dozier and Bright. Instead it alleges possession "during and in relation to a drug trafficking offense." Liberally construed, because of the delay, the indictment can be read to allege a crime.
 
 
 20
 Finally, Bright and Dozier fail to show any prejudice other than a technical defect in their indictment. They had the statute before them. The judge's jury instructions did not refer to possess but instead to "use or carry."[2] Therefore, they were in fact convicted by the jury of "using or carrying." The prosecution directed its questioning and proof to the terms "use or carry," as did the defense during cross-examination. Furthermore, Bright and Dozier objected before the presentation of their case, so it is clear that they were on notice when it was time to advance their defenses.
 
 
 21
 The indictment is insufficient only if it "cannot within reason be construed to charge a crime." Hart, 640 F.2d at 857-58. We note that Bright and Dozier waited until jeopardy attached to attack the defect. In reading the indictment itself, we pay heed to the citation of the relevant statute as well as the import of the whole count and the indictment as a whole. Finally, neither Bright or Dozier have shown any prejudice from the inaccurate terminology in the indictment. We conclude that the indictment was legally sufficient.[3]
 
 III
 
 22
 The next argument, raised only by Bright, attacks the judge's decision to tell the jury that Bright's co-defendant, Dozier, had pleaded guilty. After the start of the trial, Dozier informed the judge that he wanted to change his plea. The judge informed the jury about this in his instructions and included an admonition that the plea could in no way be used against the other defendants.
 
 
 23
 The guilty plea of a co-defendant cannot be used as substantive evidence of the guilt of any remaining defendant. Here, the issue is the judge's decision to inform the jury of the Dozier's decision to plead guilty after the start of the trial. The court accepted the plea outside the presence of the jury. The purpose of the instruction was to explain why, after the prosecution had laid out the case against both Bright and Dozier in its opening statements and had introduced evidence against both Bright and Dozier, the jury was not asked to consider the guilt or innocence of Dozier.
 
 
 24
 The cases cited by Bright fail to address the issue in this case. See United States v. Baez, 703 F.2d 453, 455 (10th Cir.1983) (admission of guilty pleas made before trial); United States v. Blevins, 960 F.2d 1252 (4th Cir.1992) (guilty pleas by six co-defendants before trial); United States v. Christian, 786 F.2d 203 (6th Cir.1986) (defendant pled guilty before trial; issue was propriety of his statement, in testifying against his co-conspirators, that he had pleaded guilty); United States v. DeLucca, 630 F.2d 294 (5th Cir.1980), cert. denied, 450 U.S. 983 (1981) (government's dismissal, in the presence of the jury, of its indictments against certain defendants).
 
 
 25
 As commentators have noted, "[o]ne of the key factors in determining whether a defendant was prejudiced by the admission into evidence, for a proper purpose, of the guilty plea of a codefendant is the presence of cautionary instructions. As long as the jury is told in some form not to consider the guilty plea in deciding the guilt or innocence of the defendant on trial, the conviction will be upheld" 8 Moore's Federal Practice p 11.10(2). Furthermore, "the general rule as to the admission of evidence of guilty plea of a codefendant is that a conviction in a case in which such evidence was admitted will be upheld if ... a cautionary instruction was given to the jury...." Id.
 
 
 26
 The court admitted the information about Dozier's plea in an attempt to explain why, after the Government presented extensive argument and evidence, the strongest case (Dozier's voice is apparently the clearest on the audiotape describing the planned drug deal) never went to the jury. Finally, the court provided a clear cautionary instruction. There is no merit to the contention that the instructions relating to Dozier's guilty plea were an abuse of discretion.[4]
 
 IV
 
 27
 The district court's judgment of conviction of Bright and Dozier is AFFIRMED.
 
 
 
 [1]
 Dozier's attorney reserved his opening until the close of the government's case
 
 
 [2]
 Bright argues that the district court, in using the correct terms of "use or carry" in the jury instructions, constructively amended the indictment and that such amendment warrants dismissal. Bright is correct when he states that a conviction cannot stand if it is based on an offense that the grand jury has not charged in the indictment. United States v. Miller, 471 U.S. 130 (1985); United States v. Gray, 790 F.2d 1290 (6th Cir.1986). However, Bright misconstrues what constitutes an amendment. In order for an instruction to amount to an amendment of the indictment, the conviction must be for an offense "materially at variance with the offense charged in the indictment." Gray, 790 F.2d at 1297
 
 
 [3]
 This, of course, is not an endorsement of the alternative language in the indictment. While the prosecutor was admirably forthright in his concession that the count was sloppily drafted, we nonetheless feel it necessary to state the obvious. Under different factual circumstances, such shoddy draftsmanship might very well result in the reversal of a conviction
 
 
 [4]
 Bright also argues that the district court erred when it refused to allow him to elicit a hearsay statement made by Dozier to the police. Bright sought to admit Dozier's statement to the police that Bright owned the gun and Dozier had come there to buy it. Bright argued that this statement was admissible hearsay as a declaration against interest under Fed.R.Evid. 804(b)(3). This argument is meritless. Far from tending to expose Dozier to any sanction, Dozier's statement was a self-serving, exculpatory declaration that in no way exposed Dozier to criminal or civil liability