**NOT RECOMMENDED FOR PUBLICATION**
File Name: 10a0209n.06

No. 08-6230

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Apr 06, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| GARY WEST, | ) | TENNESSEE |
| a/k/a GAREY WEST, | ) | |
| a/k/a/ CHARLES WILLIAMS, | ) | |
| | ) | |
| Defendant-Appellant. | | |

---

Before:  SILER and ROGERS, Circuit Judges; BELL, District Judge.[*]

**SILER**, Circuit Judge.  A federal grand jury indicted Gary West for being a felon in possession of a firearm (Count One), for possession of 201.9 grams of marijuana with intent to distribute (Count Two), and for the "use or carry" of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three).  West was convicted of all three counts, and the district court sentenced him to 245 months' imprisonment.  He appeals the district court's denial of his motion to suppress evidence and also asserts, for the first time, that his indictment was insufficient.  For the following reasons, we **AFFIRM**.

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

## I. BACKGROUND

West's co-worker Dianna King received a package addressed to her at their place of employment in 2006. She opened the package and found two brick-shaped packages covered in plastic wrap and a white-powder residue. Shortly thereafter, West called King and told her she would be receiving a package, instructed her not to open it, and said that his friend Rocky would pick it up. King did not tell West that she had opened the package, but wrapped it back up and left it for Rocky with a co-worker while she attended an appointment. When she returned, the package was gone and her co-worker told her Rocky had picked it up. King told her supervisor Tommy Robinson about the package and that she suspected it contained drugs.

Robinson and King relayed the information they knew to Detective Charles Teeter. Teeter and his team conducted surveillance in an attempt to locate the blue-green Dodge Magnum Rocky drove when he picked up the package. While surveilling Rocky's house, officers spotted the Dodge. Detective Lasundra Price, who was driving an unmarked vehicle, followed the car when it left Rocky's house. She paced the vehicle to track its speed, and observed that it was going approximately twenty miles over the speed limit. She radioed for the assistance of a marked vehicle in pulling over the car. Officer Christopher Mohney responded.

At the suppression hearing, Mohney testified that he pulled the Dodge over after hearing on the radio that someone needed a uniformed car to stop the car for a speeding violation. Mohney further testified that when he approached the car, West turned toward him quickly, yelling. Mohney also could not see West's right hand. Based on this behavior, Mohney asked West to get out of the

car, and placed West in the back seat of his patrol car. Price arrived on the scene as that was occurring.

Price described the events leading to West's detention differently: she stated that when she arrived, West jumped from the car and approached Mohney. At that point, Mohney placed West in his patrol car. She further explained that West was not in handcuffs at that point. (Mohney did not testify either way regarding the handcuffs.) After Mohney put West in the patrol car, Price walked toward the Dodge. The vehicle's driver-side door was open and Donna Perkins, West's passenger, was still in the vehicle. Price testified that she smelled a strong odor of unburnt marijuana coming from the vehicle. After she smelled the marijuana, Price requested a canine search of the vehicle.

According to Price, they were still running checks on West's and Perkins's identifications and the car when Sergeant Perry arrived on the scene with his drug-sniffing dog Xena. They arrived no more than five-to-seven minutes after Price called them. Xena alerted to the driver's side of the car, the center console and the trunk. Price opened the center console and recovered 28.6 grams of marijuana and a loaded handgun. The officers put Perkins in the back of a second patrol car that arrived after they discovered the marijuana and the gun. Price testified that the entire stop lasted approximately fifteen minutes They arrested both West and Perkins. The Dodge was impounded and upon an inventory search of the vehicle, more marijuana was discovered in the trunk.

At the suppression hearing, West and Perkins testified to different versions of events. Perkins stated that she was familiar with the smell of marijuana and that she did not smell marijuana in the car. She also stated that West was not speeding before he was pulled over. According to Perkins, after they were stopped, she handed some papers from the glove compartment to West, who then

gave them to Mohney. Mohney then returned to his patrol car and came back to the Dodge a few minutes later. Perkins specifically stated that she could not recall much that happened after that, because she was "confused, . . . really upset about the whole situation, and it just shut out for [her] from there." However, she said that she heard Mohney tell West that he stopped them because the car matched the description of a stolen vehicle. She claimed that after the second officer arrived at the scene—someone she remembered as being a man—she was taken from the car, handcuffed, put into a patrol car, and later questioned.

West similarly testified that he was not speeding at the time he was pulled over. He claimed that when Mohney stopped him, he gathered his registration papers and license to hand to Mohney. He denied that he jumped out of the car, and testified that when Mohney reached the car, Mohney asked him to step out of the car, immediately placed him in handcuffs, and put him in the patrol car. He also denied that he left the car door of his vehicle open, as Price claimed. According to West, when the second patrol car arrived about twenty minutes later, an officer pulled Perkins out of the Dodge, placed her in handcuffs, and put her in the back of the second car. He testified that Price did not arrive until the canine unit arrived, which was about thirty to forty minutes after he was placed in the back of Mohney's car, and that Price never approached his car. Thus, according to West, Price's statement that she was on the scene immediately and smelled marijuana when she approached his vehicle was an "untruth." West further testified that the Dodge was a rental vehicle rented for him but in his cousin's name, and that he had let Rocky drive it earlier in the day. West did not smell marijuana in the vehicle and did not search the car when he took possession of it.

After West was transported to the Organized Crime Unit's office, and before Teeters interviewed him, West was advised, both orally and in writing, of his *Miranda* rights. West waived his *Miranda* rights and admitted to possessing the gun and marijuana found in his car.

The district court orally denied West's motion to suppress. The court identified the main issue as one of credibility, and concluded that the government's witnesses were more credible. The district court concluded that West had been speeding, that Price smelled marijuana emanating from the car, that the drug dog alerted on the car, that there had not been an unlawful detention, and that the officers had probable cause to search the vehicle.

## II. DISCUSSION

### A. Motion to Suppress

"In reviewing a district court's suppression determination, we review findings of fact for clear error, and legal conclusions de novo." *United States v. Moon*, 513 F.3d 527, 536 (6th Cir. 2008). If the district court denied the motion to suppress, we consider the evidence in the light most favorable to the government. *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc) (internal quotation marks and citation omitted). Because the district court is in the position to observe the testimony of the witnesses we "afford due weight to the factual inferences and credibility determinations made by the district court." *Moon*, 513 F.3d at 536.

West argues that Mohney's actions exceeded the legitimate scope of the stop when he detained West in the back of his patrol car. "Once the purposes of the initial traffic stop [are] completed, there is no doubt that the officer [can]not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion

to justify a further detention." *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995). In *United States v. Torres-Ramos*, 536 F.3d 542 (6th Cir. 2008), we considered whether the traffic stop of a van exceeded the stop's initial purpose when the driver was detained in the back of a police car and the van's occupants were questioned. *Id.* at 546. After stopping the van, the officer asked the driver to step out of the van and asked for her license and registration. While the driver returned to the van to retrieve her license, the officer learned that the van was registered to someone other than the driver, as the driver had previously indicated. *Id.* at 547. When the driver returned with her license, the officer placed her in the back of the patrol car. *Id.* We noted that it was difficult to determine when the initial stop ended in *Torres-Ramos*, because the officer never began writing a speeding ticket and only intended to warn the driver. *Id.* at 550-51. Because the officer had obtained sufficient information to write the ticket before he placed the driver in the back of the car, we concluded that the purpose of the traffic stop ended when the officer put the driver in his patrol car. *Id.* at 551. However, the driver's Fourth Amendment rights were not violated, because the officer had reasonable suspicion to justify the further detention. *Id.* at 553; *see also United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008) (concluding that the purpose of a traffic stop ended when the officer had gathered the information necessary to write a citation for the initial violation and had time to issue the citation).

In the case at hand, West was detained immediately after the stop occurred and before Mohney had an opportunity to gather his license and registration or run the basic checks on the vehicle. Because Mohney never wrote a speeding ticket in this case it is, like in *Torres-Ramos*, more difficult to determine when the purpose of the initial stop ended. Here, however, Mohney was still

pursuing the purpose of the original stop and had not yet retrieved West's license or registration when he placed West in the back of the patrol car.

Even if Mohney was still pursuing the purpose of the original stop, however, placing West in the back of the patrol car violated his Fourth Amendment rights if Mohney's actions were not "'reasonably related in scope to circumstances justifying the original interference.'" *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). We analyze the scope of a traffic stop by considering the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *See, e.g.*, *Hill*, 195 F.3d at 264. Under *Terry*, we "determine 'whether the degree of intrusion . . . was reasonably related in scope to the situation at hand . . . by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.'" *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006) (quoting *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005)).

The parties disagree as to the district court's finding regarding a critical factor to our analysis: whether West was handcuffed when he was put in the back of the patrol car. The district court did not make any explicit findings on this issue. The court did state, "ultimately Mr. West was put in handcuffs, I believe, and put in the back of the vehicle, at least he was put in the back of the officer's vehicle." But this statement was clearly an attempt to summarize Price's testimony rather than a finding of fact. The court also later clarified, "at least [West] was put in the back of the officer's vehicle." Because the court was summarizing Price's testimony at this point and Price affirmatively testified that West was not in handcuffs, the court's statement cannot be interpreted as making a finding of fact that West was handcuffed. The district court expressly credited Price's testimony

numerous times, and similarly noted that it doubted the credibility of West's and Perkins's testimony. Moreover, when the district court later described West's testimony, it simply stated that Mohney put him in the patrol car and did not mention the presence of handcuffs. Given the testimony of the witnesses, the district court's determinations regarding credibility, and its conclusion that there was not an unlawful detention, there was an implicit finding that West was not handcuffed when placed in the back of the patrol car. It may have been more prudent for the district court to make a clearer factual finding on this issue, but the defendant did not affirmatively raise a factual dispute as to whether he was handcuffed on the motion to suppress, and the defendant did not request the court to clarify its factual conclusions regarding the handcuffs.

Relying on *United States v. Richardson*, 949 F.2d 851 (6th Cir. 1991), West argues that even if we conclude he was not handcuffed, his detention in the patrol car itself was unreasonable. Although *Richardson* could be read as creating a bright-line rule that being placed in the back of a patrol car constitutes an arrest, we have since established that it does not. *See, e.g.*, *United States v. Jacob*, 377 F.3d 573, 579-80 (6th Cir. 2004).

Under the circumstances here, it was not unreasonable for Mohney to put West in the patrol car. Price's and Mohney's testimonies differed as to West's behavior when Mohney approached the vehicle. Even assuming, at the very least, that West merely turned quickly toward Mohney as he approached and yelled, and that Mohney could not see West's hand, it was not unreasonable for Mohney to place West in the back of the patrol car. Considering West's behavior, the fact that Mohney was the only officer actively on the scene at that point, and that there was a passenger in the car, Mohney could have reasonably concluded that West should be secured in the patrol car for

Mohney's safety. *See, e.g.*, *Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir. 2005) ("A concern for officer safety permits a variety of police responses in differing circumstances . . . .").

In addition, West's detention was no longer than necessary to effectuate the purpose of the stop. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Shortly after West was placed in the back of the police car, Price smelled marijuana in the vehicle. This fact, along with the information Price possessed about West prior to the stop justified a further search of his car and an extended investigation. Moreover, Price used "the least intrusive means reasonably available to verify or dispel [her] suspicion," *id.*, by calling for a canine unit. Therefore, we affirm the district court's denial of West's motion to suppress.

## B. Sufficiency of the Indictment

Normally, we review the sufficiency of an indictment de novo. *See United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999). Because West did not challenge his indictment until appeal, however, we review the indictment for plain error. *United States v. Teh*, 535 F.3d 511, 516 (6th Cir. 2008). "'[U]nless the defendant can show prejudice, a conviction will not be reversed where the indictment is challenged only after conviction unless the indictment cannot within reason be construed to charge a crime.'" *Gatewood*, 173 F.3d at 985 (quoting *United States v. Hart*, 640 F.2d 856, 857-78 (6th Cir. 1981)).

West has not alleged that he was prejudiced. In determining whether a defendant was prejudiced by a faulty indictment, we may consider the evidence that the prosecution presented to the jury at trial and whether the jury instructions corrected the default of the indictment. *See, e.g.*,

*Hart*, 640 F.2d at 858. The indictment against West was even less deficient than the indictment in *Hart*. The government admits that it would have been more prudent for it to have framed the indictment in the conjunctive. However, West was not prejudiced by the failure to do so. The government presented evidence that West either used or carried a weapon, as required on 18 U.S.C. § 924(c), and the jury was properly instructed that he could be convicted if it found that he either used or carried the weapon.

In addition, construing the indictment liberally, it charged a crime, because the indictment was not facially invalid and it cited the statute. *Hart*, 640 F.2d at 858. We read West's indictment liberally to charge a crime, given its citation to the statute, which identifies each element; the evidence presented at trial fully supported his conviction; and the jury was properly instructed. *See id.* Moreover, West never appeared confused as to the charges against him, and he was able to prepare a defense to Count Three.

**AFFIRMED.**