NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0065n.06

No. 24-5677

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 04, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| MAISHA GUY, | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: BATCHELDER, BUSH, and BLOOMEKATZ, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Following a bench trial, the district court found Maisha Guy guilty of one count of possession of stolen mail, in violation of 18 U.S.C. § 1708, and one count of attempted bank fraud, in violation of 18 U.S.C. § 1344. Guy appeals her conviction, challenging the sufficiency of the government's evidence for both counts. Because the evidence was sufficient, we **AFFIRM**.

**I.**

In the early 2000s, Charles Neil, the then-incarcerated cousin of Maisha Guy, founded "Supreme International" in Las Vegas, Nevada. Guy alleges she helped Neil form the company as a founding member. But just a few years later, the company dissolved. In or around 2005, Neil reinstated "Supreme International," this time incorporating the company in Louisville, Kentucky (SI Louisville). The company, which is still active today, manages, purchases, and rehabs commercial and residential properties.

In 2009, Neil was killed. And for over ten years, Guy laid low. But in 2019, Guy alleges that she became curious about Neil's death and his business dealings, so she hired private investigator Jack King to assist in the "investigation on Supreme International." Pl. Tr. Ex. 13-A at 1. To Guy's dismay, King came up empty handed. He found no information tying Guy to SI Louisville, gave her no information on her cousin's death, and specifically told her that she did not have an ownership interest in the company.

Guy continued the investigation on her own, and what she soon uncovered was that at least two other (unrelated) companies existed nationally with names nearly identical to "Supreme International" of Louisville. One, Supreme International, LLC, of Miami, Florida (SI Miami), was founded in 1960 and manages several clothing lines, such as Perry Ellis. Another, Supreme International USA Inc. of Orlando, Florida (SI Orlando), was established in 2010 as a kitchen cabinet and home-remodeling company that now custom-builds hotels and homes.

In December 2019, Guy took a bold step. She opened a post office box in Louisville in the name of "Supreme International, LLC" and filled out change-of-address forms to have the mail from both SI Louisville and SI Orlando diverted to her. A few months later, in May 2020, Guy opened another post office box in Bowling Green, Kentucky, in the name of "Supreme International." This time, she submitted change-of-address forms and redirected mail from SI Louisville, SI Miami, and SI Orlando to her new address. At no point did Guy have permission from any of these companies to reroute their mail.

But the scheme was far from over. Because of the diverted mail, Guy was able to obtain SI Miami's bank account information. She then ordered checks from Bank of America, bearing SI Miami's bank information and her P.O. box address. In May 2020, she attempted to purchase a Camaro convertible with one of these checks at J&K Used Cars, a dealership in Bowling Green.

2

Guy drove the car off the lot and possessed the car for a number of days; however, the bank declined the check, so the dealership took back the car.

Around April 2020, postal inspector Clint Springer received a complaint from NiKisha Lindsay about her business's mail being stolen. Lindsay, it turns out, is Neil's former fiancé and present-day owner of SI Louisville. Springer began investigating the missing mail, which led to him finding diverted mail from all three companies in Guy's P.O. box. Springer executed a search warrant in July 2020 and confronted Guy at her apartment in Bowling Green. At trial, Guy admitted to submitting change-of-address forms for each company and diverting mail to herself. Agent Springer also found multiple pieces of the three companies' mail in Guy's apartment.

Guy was subsequently indicted, and the district court held a bench trial in December 2023. The government called as witnesses: Agent Clint Springer, the postal inspector; Bambi Gonzalez, a project manager for SI Orlando; Frank Molina, the vice president of security and facilities for SI Miami; Nikisha Lindsay, the owner of SI Louisville; Jimmy Johns, one of the owners of J&K Used Cars; and a retired Bowling Green police officer who conducted the investigation into the bad check and the car. Each of the company representatives testified, among other things, that Guy filled out change-of-address forms, without prior authorization, and redirected his or her company's mail to Guy's P.O. box. Gonzalez and Molina further testified to missing checks from clients deposited in Guy's bank account. And Lindsay described how Guy had removed Lindsay, and unilaterally added Guy, as the signatory for SI Louisville's account at J.P. Morgan Chase Bank. Guy also filed documents with the Secretaries of State in Florida and Kentucky, changing SI Louisville's and SI Orlando's mailing addresses to her Louisville P.O. box. And for SI Louisville specifically, Guy named herself as the registered agent, replacing Lindsay. Guy did not

3

have permission to take any of these actions, and the representatives confirmed that Guy never had any valid association with their businesses.

Guy took the stand in her defense. She first explained that alleged conversations with Neil's daughter, T'Asia Phillips, led her to open an investigation, as Phillips purportedly had raised some red flags regarding Lindsay and SI Louisville. For SI Louisville, Guy based her authority and belief that she was authorized to make the referenced changes on "the fact that [she] formed [the] company with . . . Charles," that she was acting on behalf of Neil's daughter, and that Guy allegedly was an original member of the company. She also offered two reasons for connecting SI Miami to her cousin's company. First, SI Miami supposedly started a company in Las Vegas in 2014, which was around the time that Phillips allegedly told Guy that her grandmother took her inheritance. Guy "questioned" whether the grandmother could have "used th[e] inheritance money to either start another Supreme International or buy shares or have some type of . . . representation with this organization." R. 98, Trial Tr., PageID 416. And second, Guy discovered that SI Miami had supposedly started a company in Delaware in 2005. Guy recounted receiving communications from "a number of land holdings and trusts [from Delaware] that were trying to reach out to [her] in regards to a bankruptcy reorganization . . . . So [she] kind of just put two and two together and assumed [SI Miami] could also have went into a real estate contract with Charles for property [] in Louisville." *Id.* No other evidence connected Guy to SI Miami or SI Orlando.

The district court issued its findings of fact and conclusions of law in April 2024, finding Guy guilty on both counts. Ultimately, the district court sentenced Guy to serve twelve months and one day of incarceration, followed by one year of supervised release, and to pay $47,316.01 for restitution. Guy timely appealed.

4

**II.**

In addressing sufficiency of the evidence challenges following a bench trial, we review a district court's factual findings for clear error. *United States v. Vance*, 956 F.3d 846, 853 (6th Cir. 2020). A district court's factual determination is "clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction' that the district court made a mistake." *United States v. Ellis*, 938 F.3d 757, 761 (6th Cir. 2019) (quoting *United States v. Vasquez*, 352 F.3d 1067, 1070 (6th Cir. 2003)). "A district judge's finding of fact is not clearly erroneous simply because there is evidence in the record that might support a different finding." *Vance*, 956 F.3d at 853 (internal quotations and alteration omitted).

In evaluating the district court's guilty verdict, we first assess whether its findings "support the ultimate legal conclusions" of Guy's guilt under 18 U.S.C. § 1344 and 18 U.S.C. § 1708. *Id.* at 852 (quoting *Zack v. Comm'r*, 291 F.3d 407, 412 (6th Cir. 2002)). Then, we will uphold a district court's ultimate finding of guilt if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wright*, 774 F.3d 1085, 1088 (6th Cir. 2014) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court "neither independently weighs the evidence, nor judges the credibility of witnesses who testified at trial." *United States v. Howard*, 621 F.3d 433, 460 (6th Cir. 2010) (quoting *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999)). A defendant challenging the sufficiency of the evidence carries a very heavy burden. *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000). And we will reverse a conviction "only if, viewing the record as a whole, the judgment is not supported by substantial and competent

evidence." *Wright*, 774 F.3d at 1088 (quoting *United States v. Blakeney,* 942 F.2d 1001, 1010 (6th Cir. 1991)).

## A. Attempted Bank Fraud

To sustain a conviction of attempted bank fraud under 18 U.S.C. § 1344(2), the government must prove beyond a reasonable doubt that (1) the defendant intentionally attempted "to obtain any of the moneys . . . or other property owned by, or under the custody or control of, a financial institution" (also referred to as "intent to obtain bank property"); and (2) "the envisioned result— i.e., the obtaining of bank property—occur[red] 'by means of false or fraudulent pretenses, representations, or promises.'" *Loughrin v. United States*, 573 U.S. 351, 355–56 (2014) (quoting 18 U.S.C. § 1344(2)).

The district court found the following facts relevant and sufficient to satisfy both elements beyond a reasonable doubt. First, Guy obtained SI Miami's bank account number. Second, she used that information to order checks without SI Miami's authorization. And third, she tendered one of those checks as payment for an automobile eventually seized by police after the check did not clear. Guy focuses her appeal largely on the first element of § 1344(2). She argues that the government's evidence does not support the conclusion that she intended to obtain bank property. She also disputes that the government satisfied its burden of proving that she intended to obtain bank property "by means of" false pretenses. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence supporting both elements of attempted bank fraud.

Guy first argues that the evidence is insufficient to show that she acted with intent to obtain bank property. According to Guy, the evidence only showed her intent to obtain a vehicle with SI Miami's money—money that she genuinely believed she had a right to access—not an intent to

deprive *the bank* of its property. If any fraud occurred, she reasons, it would have been directed at the dealership or SI Miami, not the bank.

Guy is wrong twice over. The evidence sufficiently shows that Guy intended to obtain bank property and cuts against her belief to the contrary. The Supreme Court rejected a similar argument in *Shaw v. United States*, 580 U.S. 63 (2016). There, the defendant obtained the bank account information of a Bank of America customer and transferred funds from the customer's account to other institutional accounts the defendant could access. *Id.* at 66. The defendant argued that § 1344(1) did not apply because "he intended to cheat only a bank depositor, not a bank." *Id.* at 65. The Supreme Court disagreed, holding that "a scheme fraudulently to obtain funds from a bank depositor's account normally is also a scheme fraudulently to obtain property from a 'financial institution,' at least where . . . the defendant knew that the bank held the deposits, the funds obtained came from the deposit account, and the defendant misled the bank in order to obtain those funds." *Id.* at 67.

Though *Shaw* involved § 1344(1) and not § 1344(2) as here, the legal principle from *Shaw* applies with equal force to the case before us. Guy may have intended to obtain only the dealership's property using third-party funds, or otherwise to obtain SI Miami's property, but Bank of America "[did] in fact possess a property interest in [SI Miami's] account." *Id.* Guy knew that Bank of America held SI Miami's money. At trial, she admitted to obtaining SI Miami's bank account numbers and ordering checks from Bank of America that featured SI Miami's account details along with Guy's P.O. box address. She further admitted that she had no prior authorization to order those checks and instead based her authority to access SI Miami's accounts on a tenuous belief that "multiple companies [] owe [her] money" from her previous investments into the company she alleges to have started with her deceased cousin. R. 98, Trial Tr., PageID 461–62.

She then offered the check as payment to the dealership for the car, knowing the dealership would submit the check to the bank for payment.

Guy claims that *Loughrin v. United States* expressly reserved ruling on whether giving a third party an unauthorized check constitutes an "inten[t] to obtain bank property." 573 U.S. at 356 n.3. *Loughrin* focused primarily on the "by means of" language in the statute. But relevant to this part of the analysis, the *Loughrin* defendant's scheme involved "convert[ing] altered or forged checks into cash." *Id.* at 353. The jury rejected the defendant's argument that he could not have intended to obtain bank property because he was indifferent to whether Target, the store that received his counterfeit check, actually submitted it to the bank—all he wanted was the cash directly from Target. *Id.* at 356 n. 3. On appeal, the Supreme Court held that the defendant waived his right to an evidence-sufficiency challenge of the jury's findings on the question of his intent, *id.*, but noted that a future court could face this independent question, *id.* at 363 n. 6.

*Shaw*'s case-specific conclusion does not affect the district court's findings in this factually distinct case, nor does it affect our ability to answer the question on appeal. Here, Guy knew that the funds for the car would ultimately come from SI Miami's bank account at Bank of America if the check cleared. She intended for the funds to be dispersed to the used car dealership, but her plan was thwarted by the bank's being alerted of potential fraud. This proof, viewed in the government's favor, is sufficient to show that Guy intended to obtain bank property.

Next, Guy claims that the evidence is insufficient to show she obtained bank property "by means of" false pretenses. She offers two main reasons in support. First, she contends that her use of a valid (though unauthorized) check distinguishes her case from *Loughrin*, where the defendant forged and altered checks. *Id.* at 353. And second, she disputes that the evidence shows

8

that she made a material misrepresentation to the bank in order to obtain the check she used to buy the car.

Take Guy's first point. *Loughrin* observed that "when the defendant has the requisite intent to acquire bank property, his presentation of a *forged* or *altered* check to a third party satisfies § 1344(2)'s 'means' requirement." *Id.* at 363 n.6 (emphasis added). But *Loughrin* did not limit § 1344(2)'s means element to forged or altered checks. Whether Guy used a valid check from an account she was unauthorized to access or manually altered a check is immaterial; both actions are fraudulent. Guy knew she did not have authorization to access SI Miami's bank accounts, which makes her tender of the check to the dealership fraudulent.

*Loughrin* also held that the "by means of" language in the statute denotes that "the given result (the 'end') is achieved, at least in part, *through* the specified action, instrument, or method (the 'means'), such that the connection between the two is something more than oblique, indirect, and incidental." 573 U.S. at 363. That standard is satisfied here. Guy knew she did not have consent to withdraw money (by means of a check) from SI Miami's account because the account was not hers. Yet, she held herself out to the car dealership as having permission to write checks on SI Miami's behalf. Guy's false representation was for the purpose of "inducing a bank . . . to part with money in its control." *Id.*; *see also United States v. Selgjekaj*, 678 F. App'x 379, 384 (6th Cir. 2017) (noting that § 1344(2)'s "by means of" language "covers false representations to persons other than the bank so as to gain control of property in the custody of the bank"). Guy's actions were material to the car dealership's decision to initially accept the check and submit it to the bank for clearance. Informed by the evidence, a rational trier of fact could conclude that Guy used false pretenses to obtain Bank of America's property.

Guy's last few points are likewise unpersuasive. Contrary to her interpretation of *Loughrin*, the district court's conclusions do not improperly expand § 1344(2) to be a "plenary ban on fraud" that interferes with the "sensitive relation between federal and state criminal jurisdiction." 573 U.S. at 362. This case is not merely about "passing a bad check," as in the hypothetical case discussed in *Loughrin* of a handbag swindler who deceives a victim into purchasing a counterfeit luxury item. *See id.* at 361, 364. While the handbag swindler misrepresents the item's authenticity to obtain a victim's money, this case involves the unauthorized use of bank accounts and the exploitation of financial systems for Guy's personal gain.

Finally, Guy argues that if this court disagrees with her interpretation of § 1344(2), the rule of lenity should apply because the statute is ambiguous. But Guy did not raise this argument in the district court, nor does she try to develop the argument on appeal. She has therefore forfeited the challenge. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted) (first and third alternations in original)).

The evidence is sufficient to sustain a conviction for attempted bank fraud.

## B. Possession of Stolen Mail

A charge under 18 U.S.C. § 1708 requires the government to prove beyond a reasonable doubt: "(1) possession by the defendant, (2) of property stolen from the mail, (3) which the defendant knew to be stolen." *United States v. Hart*, 640 F.2d 856, 857 (6th Cir. 1981). Guy

claims that the government's evidence failed to show she possessed the mail with an intent to possess it unlawfully. We disagree.

No one contests—indeed, it was undisputably established—that Guy, without permission, submitted change-of-address forms to divert mail from SI Miami, SI Orlando, and SI Louisville to the P.O. box she opened in Bowling Green. It is also undisputed that mail addressed to each of the three businesses was found in her apartment. So, this case turns on the third element: whether Guy knew the mail was stolen, or whether she acted in good faith.

Guy argues that she must have acted in good faith because she never attempted to hide her actions. Instead, she says she affirmatively notified the companies that she was taking action to divert their mail because she honestly believed she had an ownership interest in each of them.

But the evidence adduced at trial cuts against her good faith claim and establishes that she knew the mail to be stolen. Guy repeatedly testified that she had no positive proof connecting her prior business dealings with her deceased cousin to SI Miami or SI Orlando. For SI Louisville, the only evidence in her favor was her own unsubstantiated testimony, wherein she stated that she helped Neil form SI Louisville and acted as the corporate secretary. For SI Miami, Guy testified that her authority to divert mail came solely from the fact that SI Miami started a company in Delaware in 2005 and that "a number of [Delaware] land holdings and trusts" had tried to contact her. R. 98, Trial Tr., PageID 417. So, she "put two and two together" and assumed that SI Miami could also have entered into a real estate contract with her deceased cousin in Louisville. *Id.*

For SI Orlando, the connection was even more attenuated. Guy testified that SI Orlando's use of SI Miami's address established a sufficient connection to the company and gave her authority to divert its mail to her. The district court (as the trier of fact) was permitted to rely on "common sense and experience" and infer that Guy knew that the mail she possessed was stolen.

11

*See Barnes v. United* States, 412 U.S. 837, 845–46 (1973); *cf. United States v. Pejouhesh*, 603 F. App'x 347, 348 (5th Cir. 2015) (per curiam) (evidence was sufficient to convict defendant of possessing stolen mail because it showed he diverted mail intended for others, controlled and accessed the addresses to which the mail was forwarded, and possessed other people's mail without a satisfactory explanation).  All said, the government's evidence firmly established that Guy had no authorization to divert any mail.

Viewing the evidence in the light most favorable to the government, a reasonable trier of fact could have found the essential elements of possession of stolen mail beyond a reasonable doubt.

## III.

For these reasons, we **AFFIRM** the district court's judgment of conviction.